NORTHWESTERN NATIONAL CASU-
ALTY CO., Plaintiff-Appellant,

v.

GLOBAL MOVING & STORAGE, INC.,
et al., Defendants-Third Party
Plaintiffs-Appellees,

v.

FIRE LITE ALARMS, INC., et al., Third
Party Defendants-Appellees.

No. 75–1902.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 18, 1975.

Decided April 14, 1976.

Charles E. Brant, Dennis R. Newman, Glander, Brant, Ledman & Newman, Columbus, Ohio, for plaintiff-appellant.

James Friedt, Thomas M. Taggart, Vorys, Sater, Seymour & Pease, Columbus, Ohio, for Columbus Electronic Protection Co.

Arthur Sebastian, Columbus, Ohio, for Global Moving & Storage, Inc.

Charles E. Brown, Columbus, Ohio, for General Elec. Co.

James S. Monahan, Porter, Stanley, Platt & Arthur, Columbus, Ohio, for Ohio Bell Tel. Co.

William H. Schneider, S. Noel Melvin, Columbus, Ohio, for Fire Lite Alarms, Inc.

John L. Miller, McNamara & McNamara, Columbus, Ohio, for amicus curiae.

Before PECK, McCREE and MILLER, Circuit Judges.

McCREE, Circuit Judge.

This appeal in a diversity action tried in the Southern District of Ohio is taken from a judgment denying the subrogation claim of Northwestern National Casualty Co. against several defendants that it claimed were responsible for a warehouse fire. After Northwestern paid its insured $123,005.87 under a fire insurance policy covering the building, it was subrogated to his rights as the owner.

The complaint initially named as defendants Global Moving and Storage, Inc. (a lessee of a part of the warehouse); General Electric Company (the manufacturer of the ballast of a fluorescent lighting fixture in the bookkeeper's office in the warehouse); Columbus Electronic Protection Company (CEP) (the vendor and servicer of the fire alarm system purchased by Global); and Jess Howard Electric Company (the installer of the fluorescent lighting fixture). Later, Northwestern filed an amended complaint adding Lithonia Lighting, Inc. as a defendant. CEP named several third party defendants, including Fire Lite Alarms, Inc. and the Ohio Bell Telephone Company. Northwestern's amended complaint adopted for itself and incorporated all claims made by CEP against the third party defendants.

Before trial, the court entered a default judgment against Lithonia Lighting, Inc. because it had failed to file any responsive pleadings. Thereupon National Service Industries, Inc. and Lithonia Lighting Products of Cleveland (Lithonia-Cleveland) appeared solely to question service of process and to test the validity of the default judgment against Lithonia Lighting, Inc. They filed motions averring that Lithonia Lighting was an unincorporated division of National Service, not an entity subject to suit in its own name, and that Lithonia-Cleveland was a wholly owned subsidiary of National Service. They also averred that neither National Service nor Lithonia-Cleveland had been served with process and made party to the suit. National Service and Lithonia-Cleveland argued that if they did not contest the court's jurisdiction to

enter the default judgment, they might later be held to be bound by it. Although it is not clear from the record on appeal, it appears that the motions were not finally resolved before trial.[1]

The case was tried before the district judge sitting without a jury. Howard Electric was dismissed by consent after the presentation of Northwestern's case. Dismissal motions by the other defendants were denied.

At the close of the trial, the court reasoned that Northwestern had presented two theories under which GE might be held liable: breach of the duty of reasonable care, and breach of implied warranty. The trial court found that although Northwestern had presented some evidence to support its contention that the fire originated in the GE ballast in the bookkeeper's office, Northwestern had "failed to prove by a preponderance of the evidence *that the fire was caused by a GE ballast or that the fire even started in the bookkeeper's office.*" [Emphasis added.] The court reasoned that because Northwestern had failed to show that a malfunction of GE's ballast was the proximate cause of the fire, GE could not be held liable under either of these theories.

Northwestern argued that Global was liable either under the terms of its lease, or for breach of a common law duty. The district court concluded that Global was not liable because there was no proof of its negligence, and because the lease did not explicitly assign to Global the risk of destruction by fire.

Finally, the court concluded that CEP was not liable to Doyle (and therefore to Northwestern) because Doyle was an incidental, instead of an intended, beneficiary of the contract between CEP and Global for the purchase and installation of the fire alarm. Nor did CEP owe Doyle any other duty the violation of which could serve as the basis for tort liability if CEP had acted unreasonably.

Accordingly, the court entered judgment in favor of the principal and third party defendants. By a separate order the court also entered judgment on the merits in favor of Lithonia Lighting, Inc. Northwestern appeals from these judgments.

The first issue presented by Northwestern is whether the court had jurisdiction to enter judgment on the merits in favor of "Lithonia Lighting, Inc." After entering judgment in favor of the other defendants, the court granted the reserved pretrial motions to set aside the default judgment. The motions were not granted, however, on the grounds asserted, viz., that Lithonia Lighting, Inc. was not an entity subject to suit, and that the court lacked jurisdiction over its parent corporation. Having previously determined that the fire had not started in the bookkeeper's office, the court found that the Lithonia fixture in the office could not have been responsible for the fire, and it thereupon entered judgment on the merits in favor of "Lithonia Lighting, Inc." without considering the jurisdictional issues.

Northwestern argues that according to the motions and supporting affidavits filed by National Service and Lithonia-Cleveland, Lithonia Lighting was an unincorporated division of National Service, and hence not subject to suit. Neither National Service nor Lithonia-Cleveland (the entities that were subject to suit) had been served by a summons, nor did they have actual notice of the suit until after the entry of the default judgment. Moreover, they did not submit themselves to the court's general jurisdiction, instead they appeared specially only to contest the court's jurisdiction to enter judgment against Lithonia Lighting, Inc.

■ An *in personam* judgment is not valid against a defendant unless the court entering it has jurisdiction over him. As the Supreme Court stated in *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100,

---

1. The appendix does not conform to F.R.A.P. 30, or Sixth Circuit Rule 10 which requires the inclusion of the relevant docket entries in the proceedings below, and the notation of date of filing or of entering at the beginning of each document. Further, each document is to conform to the original as to dates and signatures.

110, 89 S.Ct. 1562, 1569, 23 L.Ed.2d 129, 140 (1969):

> The Court of Appeals was quite right in vacating the judgments against Hazeltine. It is elementary that one is not bound by a judgment *in personam* resulting from litigation in which he is not designated as a party or to which he has not been made a party by service of process. *Hansberry v. Lee,* 311 U.S. 32, 40–41 [61 S.Ct. 115, 85 L.Ed. 22] (1940). *The consistent constitutional rule has been that a court has no power to adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant.* E. g., *Pennoyer v. Neff,* 95 U.S. 714, [24 L.Ed. 565] (1878); *Vanderbilt v. Vanderbilt,* 354 U.S. 416, 418, [77 S.Ct. 1360, 1362, 1 L.Ed.2d 1456] (1957). [Emphasis added.]

█ Accordingly, the trial court erred in entering judgment in favor of Lithonia Lighting, Inc. before it determined that it had the requisite personal jurisdiction. Since the district court made no findings of fact or conclusions of law on the jurisdictional issues raised in the motions to set aside the default judgment, the case will be remanded to permit the court to determine whether it has personal jurisdiction over a Lithonia entity subject to suit. Of course, Rule 4 of the Federal Rules of Civil Procedure governs the requirements for service of process.

The second issue presented by Northwestern is whether the trial court committed reversible error in taking a view of the warehouse just before trial. Although Northwestern's counsel was notified before the view and was present when it occurred, appellant claims error on several grounds. First, it complains that it was given no notice of the request that the court take the view, and that no hearing was held on the request to permit Northwestern to state its objections. Second, Northwestern complains that although the court toured the building and asked questions first of the owner, Mr. Doyle, and later of counsel, no court reporter was present, and no oaths were administered. In addition, North-

western complains that Doyle had placed tape outlines on the walls to illustrate some features that had been altered, although defense counsel stated that this had been done without his knowledge. When the court arrived at the warehouse, Northwestern objected to the view on the ground of lack of sufficient advance notice and because there had been alterations of the building during reconstruction. The trial judge overruled these objections and stated that he could determine how the building looked at the time of the fire. When Northwestern objected to the court's questions of Doyle because he was to be called as a defense witness, the court ceased questioning him.

█ The trial court has discretion whether to permit a view of premises that are the subject of litigation. E. g., *Skyway Aviation Corp. v. Minn. Northfield & So. Ry. Co.,* 326 F.2d 701, 708 (8th Cir. 1964); *American Nat'l. Bank & Trust Co. v. Aetna Ins. Co.,* 447 F.2d 680, 686 (7th Cir. 1971); *Hametner v. Villena,* 361 F.2d 445 (9th Cir. 1966). We do not think that the circumstances complained of by Northwestern demonstrate an abuse of discretion. Northwestern was given sufficient notice of the view to enable it to be present. *Cf. United States v. Walls,* 443 F.2d 1220 (6th Cir. 1971). The fact that the appearance of the site had changed since the relevant events did not, without more, establish that allowing a view was an abuse of discretion. *Martin v. Gulf States Utilities Co.,* 344 F.2d 34, 37 (5th Cir. 1965). Northwestern has not demonstrated that the view caused the trial court to make any erroneous findings. Its objection stated before the view put the court on notice that the warehouse had been altered after the fire. Substantial testimony at the trial, much of it presented by Northwestern, detailed the condition of the warehouse at the time of the fire. Although it would have been better practice to have required a motion for the view, to permit objections, and to have had the court reporter present to make a record of the proceedings at the warehouse, we find no error since no prejudice resulted.

The final issues presented by Northwestern concern the trial court's admission, over Northwestern's objection, of (1) a model of the ceiling in the accountant's office with a fluorescent fixture attached to it,[2] (2) defense counsel's memorandum of a meeting with the warehouse owner, Doyle, who was a defense witness, and (3) diagrams marked and signed by firemen showing where they observed the fire when they entered the warehouse. Northwestern objected to the admission of the model on the ground that no foundation was laid to show that it accurately depicted the ceiling and fixture at the time of the fire. It objected to defense counsel's memorandum of his meeting with Doyle and to the diagrams marked and signed by the firemen as hearsay.

■ A party who seeks a reversal on the basis of the erroneous admission of evidence in a bench trial has a heavy burden. In *Caldwell v. Craighead,* 432 F.2d 213, 219–220 (6th Cir. 1970), *cert denied,* 402 U.S. 953, 91 S.Ct. 1617, 29 L.Ed.2d 123 (1971) we held:

> This Court will not "reverse a trial court in a nonjury case for having admitted incompetent evidence, whether objected to or not, *unless all of the competent evidence is insufficient to support the judgment appealed from or unless it affirmatively appears from the record that the incompetent evidence complained of was relied upon by the trial court and induced the court to make an essential finding which would not otherwise have been made."* *Thompson v. Carley,* 140 F.2d 656, 660 (8th Cir. 1944); *Builders Steel Company v. Commissioner of Internal Revenue,* 179 F.2d 377, 379 (8th Cir. 1950); *Herlihy Mid-Continent Company v. Northern Indiana Public Service Company,* 245 F.2d 440, 444 (7th Cir. 1957),

cert. denied, 355 U.S. 894, 78 S.Ct. 269, 2 L.Ed.2d 192; *Processteel Inc. v. Mosley Machinery Company, Inc.,* 421 F.2d 1074 (6th Cir. 1970). [Emphasis added.]

This is in accord with the view taken in many other cases. *E. g., Harrison Construction Co. v. Ohio Turnpike Comm'n,* 316 F.2d 174, 179 (6th Cir. 1963), *Willmark Service System, Inc. v. Wirtz,* 317 F.2d 486, 489 (8th Cir.), *cert. denied,* 375 U.S. 897, 84 S.Ct. 170, 11 L.Ed.2d 125 (1963).

■ Even assuming that all the challenged evidence was admitted erroneously, other unchallenged evidence is sufficient to support the verdict, and we do not believe that the trial judge relied on any of the challenged evidence to make his essential findings. Of course the model, memorandum, and diagrams were not relevant to the court's determination that Global and CEP were not liable to Northwestern. These evidentiary items are not probative of Global's negligence, its liability under its lease, an intention by Global and CEP to benefit Doyle by their contract, or any other duty owed by CEP to Doyle.[3]

The only defendant whose liability might have been affected by the admission of these items is GE. On the issue of GE's liability, the trial court's central finding was that:

> . . . Some evidence was presented herein that the fire was caused by a ballast manufactured by GE. However, evidence of greater weight was introduced that the fire did not originate in the bookkeeper's office and therefore was not caused by a faulty ballast located in the area of the bookkeeper's office. Northwestern has failed to prove by a preponderance of the evidence that the fire was caused by a GE ballast or that

---

**2.** The model was marked as an exhibit, but not formally received as evidence. Northwestern, however, argues that the court considered it as evidence, and we will assume *arguendo,* that it was evidence.

**3.** The claimed errors also have no relevance to the district court's finding that CEP and Northwestern had failed to prove the liability of third party defendants Fire Lite Alarms, who manu-

factured the sensors in the CEP alarm system, and Ohio Bell, whose transmission line connected the alarm system to the alarm company's central station. CEP's liability to Northwestern was a prerequisite to the success of Northwestern's claim over against the third party defendants, and we have already determined that the claimed errors did not affect the determination of this liability.

the fire even started in the bookkeeper's office.

The trial court summarized the evidence introduced by the defense to show that the fire started outside the bookkeeper's office. It identified four basic items of evidence supporting this finding. The first was that the firefighters who responded to the alarm believed that the fire had started outside the bookkeeper's office. The court did *not* rely upon the challenged diagrams to support this finding; it stated that three named firefighters "testified to their beliefs that the fire originated southeast of the bookkeeper's office. . . ." The second item was the testimony of Global's bookkeeper that she turned off the lights when she left on the evening of the fire. As the court observed, "with no current flowing through the ceiling lights, the ballast could not have overheated." The third item of evidence was the testimony of William Powell, GE's expert on ballasts, about the safety aspect of the GE ballast. In a footnote the court observed that it was "unnecessary to determine whether the ballast was ill designed" because "Northwestern failed to prove that the fire originated in the bookkeeper's office." The final evidence that the court noted was the testimony of John Kennedy, GE's expert on fires. Kennedy testified that in his opinion the fire originated southeast of the bookkeeper's office. He concluded that the metal near the ballast would have melted (which it did not) if the fire had begun in the office. Similarly, if the fire had begun there, the office would have been consumed by the time the firemen entered. However, Kennedy stated that the firefighters saw no fire when they first walked through the office. In Kennedy's opinion the pattern of "spalling" observed on the floor of the warehouse indicated that the fire had an incendiary origin, and was set by an arsonist.

The court's summary of the evidence upon which it relied demonstrates that there is substantial support for its judgment without reliance upon the challenged evidence. Also, it does not affirmatively appear that the court relied upon any of the challenged evidence to make an essential finding. It is obvious that the court did not base any of its conclusions about the origin of the fire on either the memorandum or the model. Northwestern has challenged only the admission of Kennedy's diagrams, not the expression of his opinions, even though some were based in part on the diagrams that he had prepared before his interviews with the firefighters. In addition, the firefighters themselves testified at trial. Accordingly, we hold that there was abundant unchallenged evidence to support the verdict, and no essential finding was based upon the challenged evidence.

The judgment of the district court will be affirmed in all respects, except that the judgment in favor of Lithonia Lighting, Inc. will be vacated and remanded for further proceedings. Costs will be allowed to all appellees except the Lithonia group. Their costs shall abide further proceedings.