**SIMOD AMERICA CORP., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Slip Op. 86–70.**

United States Court of International Trade.

July 16, 1986.

Rode & Qualey, Michael S. O'Rourke, New York City, for plaintiff.

Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Barbara M. Epstein, New York City, for defendant.

*Memorandum Opinion and Order*

RE, Chief Judge:

The question presented in this case pertains to the proper classification, for customs duty purposes, of certain merchandise imported from Italy, and described on the customs invoices as shoe "uppers."

The merchandise was classified by the Customs Service as unfinished footwear under TSUS item 700.67 or 700.35, depending upon the amount of leather on the exterior surface.

Plaintiff has protested the classification, and contends that the merchandise is properly classifiable as shoe "uppers" under TSUS items 386.07, 386.50, or 386.04, or under TSUS items 791.90 or 791.27, depending on the leather content. Although the duties assessed and claimed varied depending on the amount of leather on the exterior surface, the duties on unfinished footwear are considerably higher than those assessed for parts or components of shoes.

Plaintiff contends that the Customs Service erred in determining that the imported shoe "uppers," which contained an underfoot or midsole, were substantially complete, and thus were classifiable as unfinished footwear. Rather, plaintiff submits that the imported merchandise required substantial additional manufacturing processes in the United States before it could be sold as footwear. Relying upon *Daisy-Heddon, Div. Victor Comptometer Corp. v. United States,* 66 CCPA 97, C.A.D. 1228, 600 F.2d 799 (1979), plaintiff urges that the nature, extent, and relative value of these additional manufacturing processes, in the United States, prevent classification as unfinished footware, and require that the merchandise as imported be classified as parts or components of shoes or shoe "uppers." *See also Authentic Furniture Prod., Inc. v. United States,* 68 Cust.Ct. 204, 343 F.Supp. 1372 (1972), *aff'd,* 61 CCPA 5, C.A.D. 1109, 486 F.2d 1062 (1973).

Pursuant to 28 U.S.C. § 256(b) (1982), and USCIT R. 77(c)(3), plaintiff has made a motion that the chief judge of the United States Court of International Trade authorize a judge of this Court to preside at an evidentiary hearing in Padova, Italy. Plaintiff maintains that the hearing in Padova will afford the court an opportunity "to view the manufacturing process in issue ... and to receive testimony relating to the diverse and complex manufacturing processes associated with the creation of finished footwear." In essence, plaintiff contends that an on-site view of these manufacturing processes is critical in carrying its burden of proof that the merchandise as imported could not be classified as unfinished footwear.

Plaintiff states that it operated a factory in Middletown, Rhode Island, and, utilizing a Desma twenty-four station bi-density polyurethane injection molding machine, manufactured sneakers and tennis shoes from the shoe "uppers" imported from Italy. Plaintiff further states that the decision by Customs to classify the shoe "uppers" in issue as unfinished footwear, made it uneconomical for it to continue to manufacture athletic footwear at the Middletown factory. The resulting economic hardship caused the factory to close.

According to plaintiff, only one other manufacturer in the United States uses the Desma injection molding technique, and that manufacturer is unwilling to allow competitors or other outside parties to view its factory. Although other American manufacturers use the injection molding process, their equipment is incompatible with the Desma injection molding technique.

Plaintiff maintains that the layout and manufacturing processes at the Middletown factory were identical in all respects to those at the factory of plaintiff's parent company in Padova, Italy. In addition, several of plaintiff's principal witnesses are presently employed at the Padova factory, and to require that they travel to the United States to testify at trial would impose an economic hardship upon the plaintiff. Therefore, plaintiff urges that Padova is the only place where the court may observe the manufacturing processes to which the imported shoe "uppers" were subjected at the Middletown factory, and also obtain the testimony of key witnesses.

Defendant acknowledges that the chief judge has the statutory authority to order an evidentiary hearing in Padova, but contends that the facts and circumstances of this case do not warrant such a hearing at this time. Defendant opposes plaintiff's motion on several grounds. Initially, defendant maintains that the motion is premature because the parties have not completed discovery.

Assuming *arguendo* that plaintiff's motion is timely, defendant contends that plaintiff has failed to make the requisite showing that "the interests of economy, efficiency and justice" will be served by holding a hearing in Padova. The defendant submits that plaintiff has not demonstrated that its manufacturing processes are "so special" that they require that the chief judge exercise the statutory authority under 28 U.S.C. § 256(b) to authorize a hearing abroad. Moreover, defendant maintains that plaintiff has not established that the processes and machinery in Padova are identical to those at plaintiff's Middletown factory, and thus relevant to the issues in this case.

Defendant also alleges that plaintiff has not substantiated its assertions that the witnesses who are "critical" to its case could not be present at a trial in the United States to testify about the manufacture of athletic footwear utilizing the Desma injection molding technique on the shoe "uppers" in issue. Defendant submits that one of plaintiff's primary contentions is that it would be costly for plaintiff to bring its witnesses to the United States to testify at a trial. For the chief judge to authorize the holding of a hearing in Padova, on this basis, would, in defendant's view, serve to transfer the cost and inconvenience from the plaintiff to the defendant and the court. In addition, the defendant states that plaintiff has not provided the court with any evidence that Italy has no objection to an evidentiary hearing of the type contemplated by section 256(b). Nevertheless, the defendant requests that, if the plaintiff's motion is granted, the court should order plaintiff to bear a portion of the additional expenses incurred by defendant in traveling to Padova.

■ When a trial or hearing before this Court is sought to be held outside New York City, 28 U.S.C. § 256 authorizes the chief judge to designate a judge of the court to preside at any place within the jurisdiction of the United States, or at an evidentiary hearing in a foreign country. Section 256(b), in particular, provides that:

Upon application of a party or upon his own initiative, and upon a showing that the interests of economy, efficiency, and justice will be served, the chief judge may issue an order authorizing a judge of the court to preside in an evidentiary hearing in a foreign country whose laws do not prohibit such a hearing: **Provided, however,** That an interlocutory appeal may be from such an order pursuant to the provisions of section 1292(d)(1) of this title, and the United States Court of Appeals for the Federal Circuit may, in its discretion, consider the appeal.

28 U.S.C. § 256(b) (1982).

A motion for an evidentiary hearing in a foreign country under 28 U.S.C. § 256(b) is comparable to a request, pursuant to 28 U.S.C. § 256(a), for a trial or hearing at a place within the United States other than New York City. It is obvious that a party cannot, as a matter of right, select the venue for a trial or hearing before the court. *See Shannon Luminous Material Co. v. United States*, 69 Cust.Ct. 317, 319, 349 F.Supp. 1000, 1003 (1972). To the contrary, it is clear that, pursuant to the statutory authority, the granting of a request for a trial or hearing outside New York City lies within the sound discretion of the chief judge. 69 Cust.Ct. at 320, 349 F.Supp. at 1004. The courts have long recognized this principle or policy of customs jurisprudence. In *United States v. Sanchez*, 15 Ct.Cust.Apps. 443, T.D. 42642 (1928), the Court of Customs Appeals stated that:

The business of the ... Court is so extensive that disorder and inefficiency would quickly result if assignment of cases and places of hearing were not constantly within the control of some centralized authority with that court.

*Id.* at 448, *quoted in Shannon Luminous*, 69 Cust.Ct. at 321, 349 F.Supp. at 1005.

■ Whether the trial or hearing is requested to take place in the United States, or in a foreign country, the chief judge will consider a variety of factors in exercising the statutory authority and responsibility to authorize a trial or hearing outside the

City of New York. Among the factors to be considered are: (1) the procedural posture of the litigation; (2) the question presented, and whether the issues in dispute are of fact or law; (3) the availability and convenience of the witnesses of both parties; (4) the availability of alternate means to obtain the evidence and testimony that may be presented outside of New York City; (5) the importance and relevance of the place of manufacture of the merchandise in issue, and the port of importation; (6) the cost to the parties and the court; and (7) the importance of the case to the parties, as well as the public interest.

Section 256(b) has its origins in the Customs Courts Act of 1970, Pub.L. No. 91–271, 84 Stat. 277 (1970). In enacting section 256(b), Congress granted the chief judge discretionary authority to issue an order authorizing a judge of the court to preside at an evidentiary hearing in a foreign country. The exercise of this statutory authority presupposes that there has been a showing, to the satisfaction of the chief judge, that the hearing would serve "the interests of economy, efficiency and justice." S.Rep. No. 576, 91st Cong., 1st Sess. 16 (1970); *see also* H.R.Rep. No. 1067, 91st Cong., 1st Sess. 15–16 (1970); U.S.Code Cong. & Admin.News 1970, p. 3188, 3201.

The public interest in reaching a legally correct and just determination as to the lawful classification of the imported merchandise is substantial. In this litigation alone, the plaintiff alleges that over $700,-000 in disputed duties are at stake. It is also relevant that the Footwear Division of the Rubber Manufacturers Association, Inc., a trade association representing domestic manufacturers of rubber and plastic soled footwear, has requested, and been granted, leave to file a brief *amicus curiae* in support of the plaintiff's position on the merits. It also may be observed that the expense and time necessary to hold a hearing in Italy may not be disproportionate to those incurred in holding a trial at certain ports in the United States.

When appropriate factors or circumstances are shown to the satisfaction of the chief judge, before exercising the statutory authority and responsibility, the chief judge will determine whether the foreign country will permit a hearing of the type requested. Indeed, Congress clearly contemplated that the chief judge, rather than the parties, "will work closely with the State Department to assure that the host country has no objection to holding the evidentiary hearing within its boundaries." H.R.Rep. 1067, at 15; U.S.Code Cong. & Admin. News 1970, at 3201. On this point, the court may take judicial notice of the commendable degree of cooperation that exists between the United States and Italy in matters of judicial assistance. *See, e.g., Treaty on Mutual Assistance in Criminal Matters,* Nov. 9, 1982, United States—Italy, —— U.S.T. ——, T.I.A.S. No. ——; *Convention on Taking of Evidence Abroad in Civil or Commercial Matters,* Mar. 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 7444, 847 U.N.T.S. 231 (codified at 28 U.S.C. § 1781 (1982)); *Convention on Service Abroad of Judicial and Extrajudicial Documents,* Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638, 659 U.N.T.S. 163; *International Agreements: Two Treaties between The United States and Italy,* 26 Harv. Int'l L.J. 601 (1985); *see also* Fed.R.Evid. 44.1. Of course, should the motion be granted, the chief judge will undertake the necessary and appropriate procedures to hold the hearing in the foreign country.

The legislative history of section 256(b) suggests that Congress envisioned an evidentiary hearing in a foreign country within the context of a trial commenced in the United States. The advantage of this procedure is to afford the court the opportunity to view a site in cases in which an inspection by the court is relevant to the issues in litigation. It is axiomatic in customs law that a sample can be a potent witness. *See United States v. May Department Stores Co.,* 16 Ct.Cust.Apps. 353, 356, T.D. 43090 (1928); *Marshall Field & Co. v. United States,* 45 CCPA 72, 81, C.A.D. 676 (1958). Similarly, when relevant, an on-site viewing or inspection can

be of inestimable value in permitting the court to learn and evaluate the various processes involved in the manufacture of the imported merchandise, as well as the merchandise's intended use. *See, e.g., Pistorino & Co. v. United States*, 82 Cust.Ct. 168, 172, C.D. 4799 (1979); *Dolliff & Co. v. United States*, 81 Cust.Ct. 1, 2, 455 F.Supp. 618 (1978); *see also Northwestern National Casualty Co. v. Global Moving & Storage, Inc.*, 533 F.2d 320, 323 (6th Cir.1976) (trial courts possess inherent authority to conduct on-site view of area in litigation); IV Wigmore on Evidence § 1162 (1972). Certainly, the authority to order such viewings resides in the sound discretion of the court. 533 F.2d at 323. Moreover, the court may observe the witnesses whose testimony is taken abroad and evaluate that testimony in light of the entire record. S.Rep. No. 576, at 15–16.

■ In this case, on the present procedural posture of the litigation, plaintiff's motion for an evidentiary hearing in Padova, Italy, is premature. Certain issues pertaining to pretrial discovery, including possible depositions of plaintiff's witnesses, remain unresolved. There are issues that may be resolved by mutual agreement between counsel for the parties. Hence, at this time, the court cannot conclude that the plaintiff has made the necessary showing that a hearing abroad would serve "the interests of economy, efficiency and justice."

Accordingly, it is hereby

ORDERED that plaintiff's motion is denied without prejudice; and it is further

ORDERED that within 30 days of this order, the parties shall submit to the court a schedule for the completion of pretrial discovery and the submission of any pre-trial motions; and it is further

ORDERED that within 30 days after the completion of pretrial discovery, plaintiff shall file a request for trial, which may include a renewed request for an evidentiary hearing in Padova, Italy.