CITY OF REYNOLDSBURG, Plaintiff,

v.

Carol M. BROWNER,[1] Administrator, United States Environmental Protection Agency, et al., Defendant.

No. C2–92–882.

United States District Court, S.D. Ohio, E.D.

June 24, 1993.

1. Carol M. Browner has replaced William K. Reilly as Administrator of the United States Environmental Protection Agency. She is, thus, auto- matically substituted as a party defendant to this action pursuant to Fed.R.Civ.P. 25(d).

Christopher Richard Schraff, Porter, Wright, Morris & Arthur, Columbus, OH, for City of Reynoldsburg.

James Evan Rattan, U.S. Attys. Office, Columbus, OH, for William K. Reilly.

Margaret Ann Malone, Retanio A. Rucker, Office of Atty. Gen., Columbus, OH, for George V. Voinovich and Donald R. Schregardus.

David Edsall Northrop, Samuels and Northrop Co., LPA, Columbus, OH, for The Jefferson Water and Sewer Dist. and Southwest Licking Community Water and Sewer Dist.

## OPINION AND ORDER

GEORGE C. SMITH, District Judge.

This action arises under the Federal Water Pollution Protection and Control Act ("FWPCA"), as amended, 33 U.S.C. § 1251–1387. The plaintiff seeks to compel the State and Federal Environmental Protection Agencies to perform certain nondiscretionary duties required by provisions within § 208 of the FWPCA.[2] These provisions relate to the actions that the Agencies must take to prevent, control and abate the water pollution in the Scioto River Basin area. Plaintiff asserts that the Agencies' actions directly impact the plaintiff's ability to deal with such issues. Therefore, the plaintiff has asked for injunctive and declaratory relief. This matter is before the Court on the defendants' motion to dismiss.

### I.

Plaintiff alleges the following in its complaint. Plaintiff, City of Reynoldsburg ("the City") is a municipal corporation organized under the laws of the State of Ohio. The City alleges that the defendants have not fulfilled their duties that arise under the provisions of § 208 of the FWPCA, more commonly known as the Clean Water Act. 33 U.S.C. §§ 1251–1387. Carol M. Browner is the Administrator of the United States Environmental Protection Agency ("U.S. EPA"). In that capacity, she is charged with the overall supervision, administration and enforcement of the FWPCA. Defendant, George V. Voinovich is the Governor of the State of Ohio and, in that capacity, is charged with certain responsibilities under the FWPCA. Defendant, Donald R. Schregardus is the Director of the Ohio Environmental Protection Agency ("Ohio EPA") and, in that capacity, is charged with the overall supervision, administration and enforcement of the environmental laws of the State of Ohio.

The 1972 amendments to the Clean Water Act provided for a comprehensive state and federal program to improve the nation's water quality. As part of the program, § 208 of the FWPCA authorizes areawide waste treatment management plans, administered by local government.

The City is located within the area of the Scioto River Basin and its drainage basin. In 1979–80, the Ohio EPA developed a water quality management plan for the Scioto River Basin. (Complaint, ¶ 16). This plan, the *Initial Water Quality Management Plan: Scioto River Basin,* was partially certified in

**2.** The FWPCA is codified as 33 U.S.C. §§ 1251–1387. However, for simplicity sake, the FWPCA section provisions referenced in this opinion will be cited to the FWPCA. For example, the Court refers to § 208 which, as codified, is 33 U.S.C. § 1288.

1980 to the U.S. EPA by then-Governor of the State of Ohio, James A. Rhodes. (Complaint, ¶ 17). The plan was then submitted to the U.S. EPA. (Complaint, ¶ 18). Upon review in December of 1980, the U.S. EPA did not fully approve the Ohio EPA's management plan. The Ohio EPA later amended the water quality management plan for the Scioto River Basin three times: once in May 1981, again in January 1982 and finally in September 1986. (Complaint, ¶'s 19, 20, 21).

Since 1980, the City has taken several steps to implement the *Initial Water Quality Management Plan: Scioto River Basin*. Its efforts have included: a) connecting its sewage collection system to the system of the City of Columbus; b) constructing sewers to service areas of the Scioto River and Blacklick Creek drainage basins; c) managing urban storm water runoff; and d) working with the City of Columbus in the implementation and enforcement of pretreatment requirements. (Complaint, ¶ 22).

Plaintiff asserts that since the development of the initial water quality management plan, defendant Schregardus of the Ohio EPA has taken and continues to take actions which are inconsistent with the terms, conditions and objectives of the plan. These actions include: a) the issuance of National Pollution Discharge Elimination System ("NPDES") permits for treatment works which are in conflict or do not conform with the *Initial Water Quality Management Plan: Scioto River Basin;* b) the issuance of permits, licenses or approvals for other wastewater collection and treatment systems that may not have been necessary to meet the anticipated needs of the area covered by the plan.

The City further alleges that the governor of Ohio and the Ohio EPA have not prepared and certified to the U.S. EPA an areawide waste treatment management plan for the Scioto River Basin and the U.S. EPA has not approved such a plan as required by § 208 of the FWPCA. (Complaint, Counts I, II, and III). The City also alleges that, as a consequence, all NPDES discharge permits issued by the Ohio EPA for discharges within the Scioto River Basin are unlawful (Complaint, Count IV).

The plaintiff City contends that the actions of the defendants have damaged, frustrated and prevented the City from implementing the goals, objectives and requirements of § 208 of the FWPCA. The City seeks prospective equitable and declaratory relief against the defendants. The City seeks: (1) a declaration that defendants have violated the requirements of § 208 of the FWPCA; (2) an injunction against the issuance of permits under § 402 of the FWPCA, 33 U.S.C. § 1342, which conflict with the plan; (3) an order requiring defendants to perform their mandatory, nondiscretionary duties under § 208 of the FWPCA to prepare, annually certify and approve such plans. (Plaintiff's Memorandum in Opposition, p. 6).

The Jefferson Water and Sewer District and the Southwest Licking Community Water and Sewer District both moved to intervene in this action pursuant to Fed.R.Civ.P. 24(a) and (b). Both districts were granted permissive intervention by the Court in December, 1992. They are both public bodies formed and operating under Chapter 6119 of the Ohio Revised Code to provide water supply and sewage treatment service to their residents. (Memorandum for Motion to Intervene, p. 1). Both districts adjoin plaintiff City of Reynoldsburg. Both districts have obtained from the Ohio EPA permits to construct sewers and sewage treatment plants and permits to discharge pollutants from sewage treatment plants. (Affidavits of Richard E. Fridley, Superintendent of the Jefferson district, and Joe E. Ridgeway, Superintendent of the Southwest Licking district).

The Southwest Licking district also has pending before the Ohio EPA applications for additional permits to construct sewers and a sewage treatment plant. Thus, the districts are actively involved in the water pollution permitting program administered by the Ohio EPA. The districts are already engaged in disputes with the City regarding Ohio EPA permits. Each district claims that it will be adversely affected if the City prevails in this case because facilities would be declared unlawful, operations would be disrupted and service to residents would be jeopardized.

All party defendants have filed to dismiss this action. The defendants make three arguments in support of their motion to dismiss: a) the Court lacks subject matter jurisdiction over the claims pursuant to Fed. R.Civ.P. 12(b)(1); b) the Complaint fails to state a claim on which the Court may grant relief, Fed.R.Civ.P. 12(b)(6); and c) the plaintiff lacks standing to advance the claims.

■ A motion questioning subject matter jurisdiction must be considered before other challenges because the court must find jurisdiction before determining the validity of any claims brought before it. *Gould, Inc. v. Pechiney Ugine Kuhlmann*, 853 F.2d 445 (6th Cir.1988). When a court is confronted by a motion raising a combination of Rule 12(b) defenses, it will pass on the jurisdictional issues before considering whether a claim was stated by the complaint. *Northwestern Nat'l Casualty v. Global Moving & Storage, Inc.*, 533 F.2d 320 (6th Cir.1976). Therefore, the Court will first address the issue of subject matter jurisdiction.

## II. Subject Matter Jurisdiction

Subject matter jurisdiction refers to the court's competency to hear a case. Subject matter jurisdiction is conferred upon a federal court in diversity actions (28 U.S.C. § 1332) and in suits involving a federal question (28 U.S.C. § 1331). The question of the Court's jurisdiction in the instant case revolves around the Federal Water Pollution Protection and Control Act. Thus, the issue is one of federal question jurisdiction.

### A. Federal Question Jurisdiction

■ In cases in which a federal question is involved, original jurisdiction is conferred upon the federal courts if the matter in controversy "arises under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "A right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." *Gully v. First Nat'l Bank*, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936). Thus, to determine whether a particular federal question is adequate to confer subject matter jurisdiction upon a court, two requirements must be met: (1) the suit must involve a pivotal and substantial federal element (not a frivolous element), and (2) the federal element must appear in the plaintiff's well-pleaded complaint.

The purpose of the FWPCA is to "restore and maintain the chemical, physical and biological integrity of the Nation's waters." § 101(a) of the FWPCA, 33 U.S.C. § 1251(a). The act was designed to benefit the interests of the citizens of this country. Plaintiff City brings this suit under § 208 of the FWPCA.

The City alleges that the U.S. EPA Administrator, the Governor of Ohio and the Director of the Ohio EPA have failed to perform important duties that have negatively impacted the water quality of the Scioto River Basin area. The duties allegedly arise under the FWPCA and are, therefore, a pivotal and substantial federal element to this suit.

■ The second part of the federal question jurisdiction test is whether the plaintiff has included the federal element in its well-pleaded complaint. It is not enough that there is a potential federal question in a case; it must appear on the face of plaintiff's well-pleaded complaint. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9–12, 103 S.Ct. 2841, 2846–48, 77 L.Ed.2d 420 (1983). This is a rigid pleading rule that is met by the City as the following discussion explains.

■ Count I of plaintiff's complaint specifically alleges the Ohio EPA's failure to complete activities outlined in § 208 of the FWPCA. Count II alleges that Ohio's Governor has not complied with certification provisions of § 208 of the FWPCA. Count III alleges that the Administrator of the U.S. EPA has failed annually to approve the waste treatment plans for each state as required by § 208 of the FWPCA. And Count IV alleges that the Ohio EPA has violated § 208 of the FWPCA through the issuance of National Pollution Discharge Elimination System (NPDES) permits in conflict with the management plan. The plaintiff raises several categories of alleged violations in its complaint, each of which contains the federal

element (§ 208 of the FWPCA), which is, as discussed above, a pivotal element to the suit.

"[W]here it appears ... that the right to relief depends upon construction or application of [federal law] ..., the District Court has jurisdiction." *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 199, 41 S.Ct. 243, 245, 65 L.Ed. 577 (1921). Having met the test for general federal question jurisdiction under 28 U.S.C. § 1331, the Court assumes original jurisdiction over the suit. Therefore, the defendants motion to dismiss this suit for lack of subject matter jurisdiction is **DENIED.**

### III. Defendants' Motion to Dismiss Under 12(b)(6)

■ Defendants next move to dismiss this suit for the plaintiff's failure to state a claim upon which relief may be granted pursuant to Fed.R.Civ.P. 12(b)(6). A motion to dismiss for failure to state a claim "should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). All well-pleaded allegations must be taken as true and be construed most favorable toward the non-movant. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). As discussed in section II of this opinion, the City's complaint purports to raise a claim for relief under the federal Clean Water Act. Construing the allegations as true and in favor of the City, the complaint does, indeed, state a claim upon which relief may be granted.

Rule 12(b)(6) must be read in conjunction with Fed.R.Civ.P. 8(a) which provides that a pleading for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990). The moving party is entitled to relief only when the complaint fails to meet this liberal standard. *Id.*

Again, the Court believes that the claims of water quality mismanagement offered by the City are sufficient to carry the burden standard of a 12(b)(6) motion. Therefore, the defendants' motion to dismiss based on the failure of the plaintiff to state a claim is **DENIED.**

### IV. Eleventh Amendment Sovereign Immunity Bar

The judicial authority granted by Article III is limited by the Eleventh Amendment of the United States Constitution. The Eleventh Amendment embodies the concept of sovereign immunity and provides in part that, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State...." U.S. CONST. amend. XI. The following discussion addresses the sovereign immunity of the Ohio state defendants.

### A. Ohio Governor and Ohio EPA

■ The Ohio Defendants argue that, in the absence of consent by a State, the Eleventh Amendment generally prevents a state or its agencies from being sued in federal court. *See, e.g. Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 907–08, 79 L.Ed.2d 67 (1984). The protection of immunity may be stripped away from a state in two ways: through its own consent or by federal statute. A state may waive its immunity to suit in federal court if the waiver has been unequivocally expressed. *Edelman v. Jordan*, 415 U.S. 651, 673, 94 S.Ct. 1347, 1360–61, 39 L.Ed.2d 662 (1974). Or, Congress may abrogate a state's Eleventh Amendment immunity through the "unmistakably clear" language of the statute. *Dellmuth v. Muth*, 491 U.S. 223, 227, 109 S.Ct. 2397, 2400, 105 L.Ed.2d 181 (1989). Neither the Ohio defendants nor the State of Ohio has expressly or impliedly consented to suit in this case.

■ However, the Supreme Court has promulgated an exception to the state sovereign immunity grant. This well-established rule states that suits may be maintained in federal court against state officials in their official capacity, notwithstanding the Eleventh Amendment for violations of federal law. *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights.

*Id.* at 160–162, 28 S.Ct. at 454–55. This rule was later limited to actions where the relief sought was equitable in nature and prospective in operation. *Edelman,* 415 U.S. at 664–68, 94 S.Ct. at 1356–58.

In the case at bar, the City does not seek an award of money damages or retroactive relief from the Ohio defendants. Rather, it seeks injunctive and declaratory relief. The City asks that the Ohio EPA be enjoined from issuing NPDES permits for the Scioto River Basin and from approving plans for waste collection systems within the basin area until a water quality plan is certified and fully approved. (Complaint's Prayer for Relief, ¶'s 9, 10). The City also asks for a declaration that the Ohio Governor has failed to annually certify and approve the areawide waste treatment management plan for the basin. (*Id.* at ¶'s 1, 2). These prayers for relief are clearly equitable in nature and prospective in operation.

Defendants correctly cite the general rule of sovereign immunity as it relates to state officials: "[A] suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' or if the effect of the judgment would be 'to restrain the [state] from acting, or to compel it to act.'" *Pennhurst* 465 U.S. at 101 n. 11, 104 S.Ct. at 908 n. 11 (quoting *Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15). In other words, a suit against a state official is, in fact, a suit against the state and is barred.

However, the plaintiff City calls attention to a narrow exception to this rule recognized by the Supreme Court. In *Pennhurst,* the Court stated that a suit challenging a state official's action as violative of the U.S. Constitution or federal law is *not* one against a state and is not barred by the Eleventh Amendment. *Id.* 465 U.S. at 102–103, 104 S.Ct. at 909. The logic behind this exception is clear, if the conduct of a state official violates the federal law, then the official's action is illegal. Therefore, "[t]he state has no power to impart to [the official] any immunity from responsibility to the supreme authority of the United States." *Ex parte Young,* 209 U.S. at 160, 28 S.Ct. at 454.

The violation that the plaintiff City alleges against the Ohio defendants is that they failed to annually certify and approve the waste treatment management plan to the U.S. EPA. Defendants correctly identified the 1985 EPA revised regulations to the water quality planning and management activities outlined in and including § 208 of the FWPCA as an effort to simplify and shorten the regulation. 50 Fed.Reg. 1774 (January 11, 1985). The revised regulation "provided states and local governments with increased flexibility to operate their programs." *Id.*

The revised regulations state that the areawide management plans required by § 208 of the FWPCA "shall be updated as needed." 50 Fed.Reg. 1782, § 130.6(9)(e). However, an agency's regulations cannot repeal the requirement set forth in a Congressional Act. A reviewing court must reject administrative construction of a statute, whether reached by adjudication or rule making, that is inconsistent with the statutory mandate or that frustrates the policy that Congress wrought to implement. *Sec. Industry Ass'n v. Bd. of Governors of the Fed. Reserve Sys.,* 468 U.S. 137, 104 S.Ct. 2979, 82 L.Ed.2d 107 (1984). The FWPCA is a Congressional Act. Its requirements cannot be repealed by agency regulations promulgated by the EPA. The intent of Congress must remain intact.

Therefore the Ohio governor, the Director of the Ohio EPA and the Administrator of the U.S. EPA must still perform their duties as specified in § 208 of the FWPCA. Sovereign immunity cannot shield the defendants from failing to carry out the requirements of the statute.

Because the defendants must perform their duties as specified in § 208, the defendants' Eleventh Amendment sovereign immunity argument is not persuasive. Therefore, the defendants' motion to dismiss on this ground is **DENIED.**

### V. Standing

If a party "has sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy, . . ." it has standing to sue. *Sierra Club v. Morton,* 405 U.S. 727, 731–32, 92 S.Ct. 1361, 1364, 31

L.Ed.2d 636 (1972). The Supreme Court has articulated a test for determining whether a party has the requisite "personal stake" in the outcome in *Valley Forge Christian College v. Americans United,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). At a minimum, Article III of the Constitution requires the party who invokes the court's authority to show that: (1) he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, (2) the injury fairly can be traced to the challenged action and (3) the injury is likely to be redressed by a favorable decision. *Id.*

The defendants argue that the City has alleged neither an injury sufficient to confer standing nor an injury that is fairly traceable to the defendants' conduct. The first question the Court must consider is whether, under the test set out in *Valley Forge,* the City has alleged a sufficient injury to merit standing.

1. Injury–In–Fact

The Supreme Court has determined that cognizable injury can implicate environmental, aesthetic or recreational as well as economic interests. *Sierra Club,* 405 U.S. at 734, 92 S.Ct. at 1365–66. In order to be considered among the injured, the City must show a connection with the geographical area that is the subject of the suit. *Id.* at 734–35, 92 S.Ct. at 1365–66. The complaint must properly allege that the plaintiff resides in the vicinity of, or owns property near the body of water affected by the defendants' actions. The complaint must also allege that the health, economic, recreational, aesthetic or environmental interests of the plaintiff are being and will be adversely affected by these actions. *PIRG v. Powell Duffryn Terminals, Inc.,* 913 F.2d 64, 71 (3rd Cir.1990). The City alleges that the City is within the boundaries of the Scioto River Basin. (Complaint, ¶ 16). The City further alleges that it has suffered economic harm in the form of constructing sewers and connecting its system to the City of Columbus sewage system. In addition, the City alleges that it has taken several organizational steps to implement the goals and objectives of the *Initial Water Quality Management Plan.*

The Court concludes that the City has alleged a sufficient geographical connection to the Scioto River Basin and that the City has alleged economic injuries sufficient to satisfy the requirements of Article III. *Sierra Club,* 405 U.S. at 734–35, 92 S.Ct. at 1365–66. Therefore, the City has satisfied the first part of the *Valley Forge* test.

2. "Fairly Traceable"

The defendants contend that the City cannot meet the second requirement of the *Valley Forge* test because the City has not sufficiently alleged that its injuries are fairly traceable to the defendants' conduct. However, in order to satisfy this prong of the test, the plaintiff need only allege that there is a substantial likelihood that the defendants' conduct caused its harm. *Duke Power Co. v. Carolina Env't'l Study Group, Inc.,* 438 U.S. 59, 75 n. 20, 98 S.Ct. 2620, 2631 n. 20, 57 L.Ed.2d 595 (1978).

The City alleges that it has taken action using its own economic resources in reliance on the goals stated in the *Initial Water Quality Management Plan* developed by the Ohio EPA. The City contends that the defendants' conduct of developing the plan and issuing the permits caused the economic injuries it has sustained. These allegations indicate a likelihood that the defendants' conduct caused the plaintiff's injuries. An allegation of likely causation is all that is necessary to satisfy the "fairly traceable" element of the *Valley Forge* test.

For these reasons, the Court concludes that the City has fairly alleged a substantial likelihood that the defendants' conduct caused its alleged injuries. Therefore, the City has met the second requirement under *Valley Forge.*

3. Redressability

To meet the final prong of the *Valley Forge* test the City must allege that its injuries are "likely to be redressed by a favorable decision." This requirement focuses on the connection between the injury alleged by the plaintiff and the judicial relief

sought. As discussed below, the City has alleged a strong enough nexus to establish standing.

The City seeks to compel the Ohio Governor and the Director of the Ohio EPA to perform the requirements under § 208 of the FWPCA. If these individuals and their respective agencies do, in fact, perform these duties of fully implementing the planning requirements of the FWPCA then the City's complaint will be redressed in a favorable manner. Thus, the Court concludes the City has alleged a strong enough nexus to establish standing.

All three elements of the *Valley Forge* test have been sufficiently alleged. Therefore, the plaintiff has the requisite standing necessary to bring this suit before the Court.

Based on the above discussion and analysis, the defendants' motion to dismiss is **DENIED** in its entirety.

**IT IS SO ORDERED.**