NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0236n.06
Filed: April 4, 2006

No. 04-6454

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| REGINALD SEYMOUR SIMMONS, | ) | MIDDLE DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

Before: COLE, CLAY and GIBBONS, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Reginald Seymour Simmons ("Simmons") pled

guilty in the United States District Court for the Middle District of Tennessee to being a felon in

possession of a firearm in violation of 18 U.S.C. § 922(g). In his guilty plea, Simmons reserved the

right to appeal a motion to suppress evidence that was denied by the district court. Simmons now

appeals the denial of that motion along with the denial of a motion for a view of the crime scene. For

the following reasons, we affirm the denial of the motion to suppress and the denial of the motion

for a view.

I.

Simmons was arrested by two Nashville police officers patrolling the area surrounding the

John Henry Hale Homes—a housing project operated by the Metropolitan Development and

-1-

Housing Authority ("MDHA"). The John Henry Hale Homes constitute a high-crime area, especially prone to drug activity. To curb crime, the MDHA enforces a no-trespassing policy. The policy permits only residents or guests who are accompanied by residents on the John Henry Hale property. Any non-resident who is on the property and unaccompanied by a resident is guilty of criminal trespass. The no-trespassing policy led to Simmons's arrest. Officers Donald Long and Daniel Walz stopped Simmons because they suspected him of trespassing on the John Henry Hale property.

On June 4, 2003, Officers Long and Walz were traveling down Charlotte Pike adjacent to the John Henry Hale property. Officer Walz slowed the patrol car as it passed Sixteenth Avenue North because drugs frequently are sold at the edge of the John Henry Hale property by Charlotte Pike and Sixteenth Avenue North. In that area, by a guard rail that crosses Sixteenth Avenue North and blocks vehicular access to the John Henry Hail property, Officers Walz and Long spotted Simmons and two other men. The men were standing beside a dumpster that is located on the John Henry Hale property. Officer Long recognized one of the men as Paul Smith—a drug user who frequently has been charged with burglary and trespassing on the John Henry Hale property. Smith, Simmons, and the third man noticed the patrol car and immediately started walking away from the dumpster and past the guardrail up a small incline on Sixteenth Avenue North.

Officers Long and Walz suspected that Smith was trespassing because they knew that he was not a resident of the John Henry Hale Homes and previously had been cited for trespassing on the property. Having driven past Sixteenth Avenue North, they decided to turn around on Charlotte Pike so they could stop Smith and his companions on suspicion of trespassing.

By the time Officer Walz completed the U-turn, the three men were in the parking lot of

Haddox Pharmacy at the corner of Sixteenth Avenue North and Charlotte Pike. Officers Long and Walz exited their patrol car and approached Smith, Simmons, and the third man. Officer Long recognized the third man as Ross Perry Manning whom his former partner had cited for trespassing on the John Henry Hale property. Simmons was unknown to both officers, but they suspected him of trespassing because they did not think he was a resident of the John Henry Hale Homes.

Officers Walz and Long had a conversation with Smith and asked Manning and Simmons if they lived at the John Henry Hale Homes. Manning and Simmons said that they were not John Henry Hale residents, but Simmons indicated that he had a female relative who was a resident. Nevertheless, Simmons was unaccompanied by the resident, so Officers Long and Walz decided to cite him, along with Smith and Simmons, for trespassing.

Before issuing the citations, police officers who had arrived to assist Officers Long and Walz conducted a routine records search and found that Simmons was a convicted felon and the subject of two outstanding warrants. The police officers arrested Simmons on the warrants and conducted a search incident to the arrest. The search uncovered a crack pipe, two rocks of crack cocaine, and a loaded .25 caliber pistol on Simmons's person. A grand jury indicted Simmons for being a felon in possession of a firearm.

Simmons moved to suppress the firearm, arguing that the police officers originally stopped him without reasonable suspicion of criminal activity. He claimed that the firearm must be suppressed because the stop that led to its discovery was unlawful. Simmons asserted that the police officers did not reasonably suspect him of violating the MDHA no-trespassing policy because they did not see him on the John Henry Hale property. The district court denied his motion to suppress

after crediting the testimony of Officers Long and Walz over that of Manning and Simmons.

Simmons moved the district court to reconsider its denial of his motion to suppress. He also moved the district court to view the Sixteenth Avenue North area because he contended that Officers Long and Walz could not have seen the scene that they described from their moving patrol car. The district court denied both Simmons's motion to reconsider and his motion for a view.

After the district court refused to suppress the firearm, Simmons pled guilty to violating 18 U.S.C. § 922(g). He reserved his right to appeal the denial of the motion to suppress. He now challenges that denial before this court along with the district court's denial of his motion for a view.

II.

The primary thrust of Simmons's challenges to both the denial of the motion to suppress and the motion for a view is that Officers Long and Walz did not see him on the John Henry Hale property.

Simmons argues that the district court erred in denying his motion to suppress because his detention violated the Fourth Amendment and *Terry v. Ohio*, 392 U.S. 1 (1968). He asserts that Officers Long and Walz detained him without reasonable suspicion that he was trespassing. Simmons also argues that the district court only concluded that the officers had reasonable suspicion by improperly relying on the fact that he had been trespassing on the John Henry Hale property earlier in the day. Additionally, Simmons argues that the district court erroneously credited the officers' testimony that they saw him on the John Henry Hale property because it differed from their testimony at a state court preliminary hearing on charges that arose from the same incident.

Simmons's challenge to the district court's denial of his motion for a view relies on the same

-4-

basic arguments as his challenge to the district court's denial of his motion to suppress. He argues that viewing the scene of his arrest was necessary to demonstrate that Officers Long and Walz did not see the trespass that would have given them reasonable suspicion for the *Terry* stop. He claims that the inconsistencies between the officers's testimony at the state court preliminary hearing and the suppression hearing justified an independent viewing by the district court. Even though Simmons's challenge to the denial of the motion for a view relies on the same arguments as his challenge to the denial of the motion to suppress, the district court's decisions to deny the motions are reviewed separately.

### A. Motion to Suppress

Under *Terry v. Ohio*, "where a law enforcement officer lacks probable cause, but possesses a reasonable and articulable suspicion that a person has been involved in criminal activity, he may detain the suspect briefly to investigate the suspicious circumstances." *United States v. Bentley*, 29 F.3d 1073, 1075 (6th Cir. 1994). The investigation, or *Terry* stop, must be reasonably related in scope to the suspicious circumstances that justified its initiation. *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984). "Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." *Id.* If the investigation undertaken in a *Terry* stop exceeds the justified scope or the *Terry* stop initially proceeded without reasonable suspicion, the detention violates the Fourth Amendment and any evidence uncovered by it should be suppressed. *See Terry*, 392 U.S. at 19 ("[O]ur inquiry is a dual one—whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first

place.").

When this court reviews a motion to suppress, it views "[t]he evidence . . . 'in the light most likely to support the district court's decision.'" *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999) (quoting *United States v. Braggs*, 23 F.3d 1047, 1049 (6th Cir.1994)). Generally, this court examines the district court's legal conclusions *de novo* but defers to the district court's factual findings and credibility determinations unless they are clearly erroneous. *See United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (identifying *de novo* as the standard of review for legal conclusions and clear error as the standard of review for factual findings); *United States v. Navarro-Camacho*, 186 F.3d at 705 (noting that we accord great deference to credibility determinations by district courts). Factual findings or credibility determinations by the district court are clearly erroneous only if "'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

When a motion to suppress is premised on challenging a *Terry* stop, "determinations of reasonable suspicion . . . should be reviewed *de novo* on appeal." *Ornelas v. United States* 517 U.S. 690, 699 (1996). "[T]he district court is at an institutional advantage, [however,] having observed the testimony of the witnesses and understanding local conditions, in making this determination. Accordingly, 'due weight' should be given to the inferences drawn from the facts by 'resident judges.'" *United States v. Townsend*, 305 F.3d 537, 542 (6th Cir. 2002) (quoting *Ornelas v. United States*, 517 U.S. 690, 698 (1996)) (alterations omitted).

Even though determinations of reasonable suspicion are reviewed *de novo*, this court applies the clear error standard of review here because Simmons is attacking the factual findings and credibility determinations on which the conclusion of reasonable suspicion is based. He is arguing that the district court concluded that the officers had reasonable suspicion because it improperly credited the officers's testimony and made the factual finding that the officers could see onto the John Henry Hale property from their moving patrol car. Applying the clearly erroneous standard of review and paying due deference to the district court's credibility determinations, we affirm the denial of Simmons's motion to suppress.

The district court correctly found that "it is possible to see from Charlotte Avenue down 16th Avenue over to the MDHA property as a car is traveling westbound on Charlotte" and that "there is a clear view of the area where the officers said they were able to see the three individuals." The maps and photographs offered by Simmons confirm that nothing obscures the view from Charlotte Avenue straight down Sixteenth Avenue North to the area surrounding the guardrail. Given this view and the fact that Officers Long and Walz purposefully slowed their patrol car to look for criminal activity, it was not clearly erroneous for the district court to find that Officers Long and Walz could have seen Simmons on the John Henry Hale property and that the scene was as they described.

The credibility determinations made by the district court—that Officers Long and Walz could see onto the John Henry Hale property and that Simmons was on the John Henry Hale property when Officers Long and Walz saw him—were also not clearly erroneous. The transcript of the state court preliminary hearing does not undermine the officers' credibility. Despite some

inconsistencies in the officers' descriptions of Simmons's exact location and behavior—whether he was standing or walking and whether he was on the sidewalk or near the dumpster—the testimony at the preliminary hearing and the suppression hearing were substantively consistent. At both hearings, Officers Long and Walz testified that Simmons was on John Henry Hale property when they spotted him. Likewise, Manning's and Simmons's testimony that they were not on the John Henry Hale property when they first saw the patrol car does not destroy the officers's credibility. The district court was entitled to credit the testimony of Officers Long and Walz over that of Manning and Simmons "as it [was] in the best position to observe [the] witnesses" for indicia of credibility in their testimony. *Johnson*, 344 F.3d at 567. Because the district court is better able to discern credibility from conflicting testimony and the officers' credibility was not destroyed by the preliminary hearing testimony, the district court's credibility determinations are not clearly erroneous.

**B. Motion for a View**

The district court has discretion to grant or deny a motion for a view of the location of the arrest. *See Nw. Nat'l Cas. Co. v. Global Moving & Storage, Inc.*, 533 F.2d 320, 323 (6th Cir. 1976) ("The trial court has discretion whether to permit a view of premises that are the subject of litigation."); *Reid v. United States*, 276 F. 253, 259 (6th Cir. 1921) (finding that an order permitting a jury view "was within the court's discretion"); *see also United States v. Crochiere*, 129 F.3d 233, 236 (1st Cir. 1997) ("The decision to permit a view is entrusted to the sound discretion of the trial court."). This court will reverse that decision only if the district court abused its discretion in rendering it. *See Nw. Nat'l Cas. Co.*, 533 F.2d at 323 ("We do not think that [the view] complained

of by Northwestern demonstrate[s] an abuse of discretion."); *see also United States v. Woolfolk*, 197 F.3d 900, 905-06 (7th Cir. 1999) ("It is well-established that the decision whether to grant . . . a motion [for a view] rests within the discretion of the trial court and is reviewable only for abuse of that discretion."). "A court generally acts within [its] discretion in denying a motion for a view when there is sufficient evidence describing the scene in the form of testimony, diagrams, or photographs." *Crochiere*, 129 F.3d at 236; *see also United States v. Triplett*, 195 F.3d 990, 998-99 (8th Cir. 1999) (finding that the denial of a motion for a view did not constitute an abuse of discretion because "the evidence presented at trial included photographs and diagrams of the sites of Triplett's arrests, as well as testimony regarding the circumstances and conditions at those locations at the relevant times").

The district court did not abuse its discretion when it denied Simmons's motion for a view. Viewing the Sixteenth Avenue North area was unnecessary because the district court, which was functioning as the factfinder at the suppression hearing, was familiar with the area, and Simmons introduced twenty-nine photographs, five maps, and testimony from Nashville's lead mapper to describe where he was arrested. Views, as Simmons acknowledged in his brief, "'are generally accepted when they are necessary to an understanding of the litigation and the requisite information cannot be introduced in any other way.'" (quoting 2 Jack B. Weinstein, *Weinstein's Federal Evidence* § 403.07(4) (2d 2003). Here, the requisite information could be and was introduced through documentary evidence, testimony, and judicial notice. The First and Eighth Circuits have held that district courts do not abuse their discretion by denying a motion for a view when the scene is described by testimony and documentary evidence. *Triplett*, 195 F.3d at 998-99; *Crochiere*, 129

F.3d at 236. We follow our sister circuits and hold that the district court did not abuse its discretion when it denied Simmons's motion for a view because ample evidence of the scene was presented at the suppression hearing.                     III.

For the foregoing reasons, we affirm the district court's denial of Simmons's motion to suppress and motion for a view.