**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Gayle King SHROPSHIRE, Defendant-
Appellant.**

**No. 73–1318.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 12, 1973.

Decided June 5, 1974.

138

Robert H. Feeney (Court Apptd.), Chattanooga, Tenn., for appellant; Ortwein & Feeney, Chattanooga, Tenn., on brief.

W. Lloyd Stanley, Jr., Asst. U. S. Atty., for appellees; John L. Bowers, Jr., U. S. Atty., E. D. Tenn., Chattanooga, Tenn., on brief.

Before PECK and McCREE, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

O'SULLIVAN, Senior Circuit Judge.

We consider the appeal of Gayle King Shropshire from conviction upon jury trial in the United States District Court for the Eastern District of Tennessee, Southern Division, on two counts of a three-count indictment. These counts charged appellant with: (1) being an accessory after the fact to bank robbery, in violation of 18 U.S.C. § 3; (2) possessing stolen money, in violation of 18 U.S.C. § 2113(c); and (3) possessing a firearm which had not been registered to him under a National Firearms Registration and Transfer Record, in violation of 26 U.S.C. §§ 5861(d) and 5871. Appellant was found guilty as to counts 1 and 3.[1]

On June 15, 1972, three armed men robbed the East Brainerd branch of the Pioneer Bank of Chattanooga, Tennessee, of the sum of $12,822. The money which was stolen included a stack of "bait money"—a packet of $20 bills whose serial numbers had been previously recorded by the bank. Because all three men had concealed their faces with ski masks and wore long coats, no witnesses were able to make specific identification of the robbers. The disguises, paraphernalia, and guns employed were observed, however.

Thereafter, on July 19, 1972, appellant and his wife Brenda purchased some groceries at a food market in Tennessee. As payment for the purchases, Brenda gave the owner a $20 Federal Reserve Note. The note was placed under the cash register drawer, and after the Shropshires left the store, Robert Burkhart, a Hamilton County Deputy Sheriff, copied its serial number. After checking it the next day, it was discovered that the serial number matched one of the numbers of the "bait money" taken in the robbery.

On July 21, 1972, FBI Special Agent Walter Smart secured a search warrant for the persons and premises of appellant and Brenda Shropshire. This warrant was subsequently executed by Smart and his fellow FBI agents on July 24. From the Shropshires' trailer home, they seized three pairs of brown cloth gloves, two green cloth bags and two pistols. In a 1968 Pontiac automobile, which was registered to appellant, the agents seized various articles, including a .32 calibre revolver, three ski masks, a 12-gauge sawed-off shotgun, and a pair of pants containing two shotgun shells. There was testimony by witnesses to the robbery that these articles were similar to the paraphernalia and arms employed by the bank robbers. Appellant and his wife were arrested on a warrant issued July 31, 1972.

Prior to trial, appellant made various motions, including a motion to suppress evidence obtained upon execution of the

1. Also indicted was appellant's wife, Brenda Shropshire, and she was convicted on a count of possessing stolen money, in violation of 18 U.S.C. § 2113(c). The District Judge subsequently granted Mrs. Shropshire a new trial, and according to the government's brief, a nolle prosequi was entered as to her.

search warrant and a motion to dismiss count one of the indictment. These motions were overruled. Upon conviction, appellant was sentenced to serve five years on count one and two years on count three of the indictment.

In this appeal, appellant assigns the following errors:

1) That the Court erred in refusing to strike the jury panel.

2) That the Court erred in refusing to dismiss the indictment.

3) That the Court erred in overruling appellant's motion to suppress evidence obtained as a result of the search and seizure.

4) That the Court erred in limiting cross-examination of a government witness.

5) That the evidence preponderates to support against the verdict and in favor of the defendant.

We affirm.

We discuss the charges of error in the order of their presentation in appellant's brief.

### I. *Motion to Strike Jury Panel.*

In his *voir dire* examination of the prospective jurors, the District Judge asked them collectively whether any of them knew "the defendant Gayle King Shropshire or have any connection with him, or so far as you know, any close person to you have any such connection." A Mrs. Robbs, one of the jurors, held up her hand and the following ensued:

"Q. THE COURT: Mrs. Robbs, do you know Mr. or Mrs. Shropshire?

MRS. ROBBS: Not personally, but my husband knows him.

THE COURT: Your husband knows him, but you don't know him at all?

MRS. ROBBS: No, sir.

THE COURT: Is there anything about your husband's connection with him, Mrs. Robbs, that might cause you to start the trial with some idea about whether or not he was guilty or innocent of these charges?

MRS. ROBBS: I don't know about this case, but in a previous case we had some discussion.

THE COURT: We are only concerned with the case being tried here today. You say you have had some discussion with your husband about some other case at some other time?

MRS. ROBBS: Yes, sir.

THE COURT: All right, Mrs. Robbs, the Court will excuse you."

The entire jury panel was sent out of the courtroom and defense counsel then moved that all of the jurors who had heard the above be excused. This motion was denied and upon the jury panel returning to the courtroom, the District Judge advised them:

"THE COURT: Now, ladies and gentlemen, one other question the Court would like to ask you. One of the prospective jurors, Mrs. Robbs, in giving her answer to certain questions asked by the Court, mentioned something about an earlier offense with which Mr. Shropshire was charged. That has no place in the trial of this lawsuit. The defendants are specifically charged in the indictment in this case and they are to be found guilty or innocent of those charges and not of any other charges.

"Now, if you believe that what you heard would prejudice you in any way against Mr. Shropshire so that you could not put that out of your mind and give him a fair and impartial trial on the charges of this indictment, will you please raise your hand at this time?

"If you have any doubt whether or not you can take that out of your mind and give him a fair and impartial trial on this indictment, please raise your hand at this time."

No juror made a response. We are neither persuaded that prejudice was visited upon appellant by the event set out above, nor that the District Judge's handling of the matter was an abuse of discretion.

## II. *Motion to Dismiss the Indictment.*

The relevant motion asked dismissal of Count I of the indictment which charged:

"The Grand Jury charges that on or about July 24, 1972, in the Southern Division of the Eastern District of Tennessee, the defendant GAYLE KING SHROPSHIRE, knowing that a bank robbery had been committed in violation of Title 18, United States Code, Sections 2113(a) and (d), did knowingly and wilfully relieve, receive, comfort and assist the persons who had committed the aforesaid offense, their identities being unknown to the Grand Jury, in order to hinder and prevent their apprehension for trial and punishment; that is to say, "The said GAYLE KING SHROPSHIRE, well knowing that persons unknown to the Grand Jury had committed a bank robbery as aforesaid, did receive, possess and conceal the weapons, disguises, ski masks, and other items used in the aforesaid robbery in order to prevent detection and discovery of said items, for the purpose of aiding and assisting said persons to the Grand Jury unknown to escape apprehension for trial and punishment."

Except for its claims that the indictment was insufficient because it did not "identify the person or persons involved in the alleged bank robbery," and that the indictment was "so vague, ambiguous and indefinite as to deprive the defendant of the rights guaranteed by * * * the Constitution of the United States," the motion to dismiss merely charged conclusionally that the indictment was fatally defective.

The prosecution conceded, and the indictment averred, that the identity of the bank robbers was unknown to the government. A motion for a Bill of Particulars was made on the eve of trial, at which time defense counsel advised the Court:

"We didn't file a motion for a bill of particulars before, but at the time of the arraignment we talked to the At-torney General and he suggested that we submit to them exactly what we were desirous of obtaining. We did that and that was complied with."

Appellant cites no authority to support a claim that identification of the bank robbers was essential to the indictment's validity. The District Judge's memorandum opinion, denying the motion to dismiss, stated:

"The indictment contains all the elements of the statutory offenses intended to be charged by a grand jury and sufficiently apprises each defendant what he or she should be prepared to meet, so that a judgment on any count would be a bar to further proceedings against the same defendant for the same respective offenses. The defendants' motion, therefore, hereby is OVERRULED: See United States v. Cook, D.C.Tenn. (1962), 213 F. Supp. 568, 569; Richardson v. United States, C.A. 6th (1945), 150 F. (2d) 58, 60; Rudin v. United States, C.A. 6th (1958), 254 F. (2d) 45 [3–5]."

■ His ruling was correct. *See also*, United States v. Marra, 481 F.2d 1196, 1199 (6th Cir. 1973), cert. denied, 414 U.S. 1004, 94 S.Ct. 361, 38 L.Ed.2d 240 (1973); United States v. Levinson, 405 F.2d 971, 977 (6th Cir. 1968), cert. denied, 395 U.S. 958, 89 S.Ct. 2097, 23 L.Ed.2d 744 (1969).

### III. *Motion to Suppress.*

This motion asserted:

1) That the affidavit to the search warrant does not establish probable cause that any stolen money was at the premises to be searched.

2) The premises were not those described in the warrant.

The search warrant in issue authorized the search of the persons of Brenda and Gayle King Shropshire, as well as a house trailer described in the affidavit for the warrant as the residence of the Shropshires. The warrant went on to state that there was being concealed on the above persons and premises the

proceeds from the Pioneer Bank robbery, "including a quantity of $20 Federal Reserve Notes, Serial Numbers of which had been previously recorded and which are available for comparison."

The affidavit for the search warrant request stated the following:

"That on the morning of June 15, 1972, three masked white males robbed the East Brainerd Branch of the Pioneer Bank which is F.D.I.C. insured, the robbery being by force. Officials of the bank furnished a tabulation of the stolen money, including a list of $20 Federal Reserve Notes taken. The Serial Numbers of which had been prerecorded by bank employees. One such Federal Reserve Note was a Series 1950 A $20, Serial No. F42542698A.

"On July 19, 1972, Robert Burkhart, a Hamilton County, Tenn. Sheriff's Deputy was at the Ship & Shore Food Market, 7428 Hixson Pike, and while there observed Gayle King Shropshire and wife, Brenda Faye Shropshire, (who he knows by sight) in this store. He saw that in payment for a purchase a $20 Federal Reserve Note was given by them to the store manager, which bill he subsequently examined. The serial No. thereon corresponded to one of the prerecorded Serial Numbers, to-wit: F42542698A. The storekeeper stated to Deputy Burkhart that the said $20 Note had been given to him by Brenda Faye Shropshire.

"Gayle King Shropshire was previously, on February 14, 1970, observed in possession of two $20 Federal Reserve Notes with prerecorded Serial Numbers determined subsequently to be a part of the proceeds of the robbery of the Coalmont Savings Bank, Coalmont, Tennessee, which robbery occurred on February 12, 1970.

"On June 10, 1970, W. C. Lasley, Soddy, Tennessee, furnished two $5.00 bills to FBI. He advised he had obtained these bills from his grandson, Bobby Eugene Hardin, who in turn had advised him he had obtained these

$5.00 from Gayle King Shropshire. A check of the Serial Numbers of these bills disclosed that one of the bills is a part of the money taken in the robbery of the First National Bank of Stevenson, Higdon Branch, Higdon, Alabama on May 21, 1970. A number of Serial Numbers of the stolen bills in this bank robbery had been prerecorded by bank employees.

"A confidential informant, who has furnished reliable information in the past, has informed Agents of the FBI that Gayle King Shropshire has participated in other bank robberies.

"Previous investigations have disclosed that Gayle King Shropshire and Brenda Faye Shropshire have resided as husband and wife in the above described trailer at its present address in excess of one year.

"The affiant knows that in the past Gayle King Shropshire and Brenda Faye Shropshire have been unemployed and during their unemployment have purchased several different automobiles. In the best of my knowledge neither is employed at this time."

This affidavit was signed by FBI Special Agent Walter W. Smart, Jr.

■ In testing the validity of a search warrant, we employ the Supreme Court's rule that affidavits for search warrants are to be interpreted in a "commonsense and realistic fashion," and that "[a] grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965); see United States v. Harris, 403 U.S. 573, 577, 91 S.Ct. 2075, 29 L. Ed.2d 723 (1971); Spinelli v. United States, 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); Aguilar v. Texas, 378 U.S. 108, 110–111, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); United States v. Williams, 459 F.2d 909, 913 (6th Cir. 1972).

The claim that the premises searched were not those described in the search warrant is bottomed upon the fact that the officer who executed the warrant testified at the hearing on appellant's motion that he actually searched "the third trailer" on the road described in the warrant, whereas the warrant referred to the "second trailer." There is no dispute, however, that the appellant's trailer was "a white trailer trimmed in brown, located on Lot 37." Nor is there dispute that appellant's trailer was the one searched.

In view of the rule that the validity of search warrants is to be interpreted in a "commonsense and realistic fashion," as set out in the authorities cited above, we believe that probable cause was provided by the affidavit and that there was no illegality in the execution of the warrant.

We are also admonished to pay great deference to a finding of probable cause, Spinelli v. United States, *supra*, 393 U.S. at 419, and that resolution of doubtful cases "should be largely determined by the preference to be accorded to warrants." United States v. Ventresca, *supra*, 380 U.S. at 109; Jones v. United States, 362 U.S. 257, 270, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). We are not persuaded to rule that a Federal Magistrate and a United States District Judge both erred in their determinations that there existed probable cause for the issuance of the search warrant, or that the District Judge erred in finding its execution valid.

### IV. *Limitation of Cross-examination.*

During defense counsel's cross-examination of FBI Agent Walter W. Smart, who was present when the search warrant was being executed, it was shown that at that time a brother of appellant—one John Shropshire—arrived on the scene. Counsel sought to elicit from Agent Smart the fact that John Shropshire had then asserted that he was the owner of the automobile in which one or more guns and other paraphernalia allegedly used in the bank robbery were found. An objection to what

John Shropshire said in this regard was sustained. Except for this excluded hearsay statement of asserted ownership by John Shropshire, the evidence showed that the automobile was owned by appellant late in the month of June, well before the July 24 search. No attempt was otherwise made to establish John Shropshire's ownership of the vehicle. His testimony could have been obtained at trial or by means of deposition because he was then confined in a federal penitentiary. No attempt, however, was made to impair the official record of appellant's ownership other than by the excluded hearsay. Sustaining the involved objection was within the trial judge's discretion. United States v. Johnson, 414 F.2d 22, 28 (6th Cir. 1969), cert. denied, 397 U.S. 991, 90 S.Ct. 1112, 25 L. Ed.2d 399 (1970); United States v. Johnston, 318 F.2d 288, 291–292 (6th Cir. 1963).

### V. *Sufficiency of Evidence.*

In testing the sufficiency of the evidence, we employ the familiar rule that in doing so we view the government's evidence in its most favorable light, indulging inferences legitimately drawn therefrom. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Decker, 304 F.2d 702, 705 (6th Cir. 1962).

We, of course, may not give any weight to the fact that neither the appellant nor his wife took the stand. Such fact, however, leaves unimpaired the evidence that appellant's wife, in appellant's presence, passed one of the "bait" treasury notes taken in the bank robbery involved. We have set out above the items of paraphernalia and the guns found in the search. While no witness could say that the seized guns were in fact those used in the bank robbery, they were identified as being the make and calibre of armament carried by the bank robbers. As to the ski masks, gloves and other items of disguise, minimal discrepancies between those found in appellant's trailer and the descriptions given by the robbery witness did not in our view forbid the jury

from employing these items in support of their concensus. In total, the evidence was sufficient to allow the jury to convict the appellant of the charged offenses.

Judgment affirmed.