*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0191p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

No. 04-2497

*v.*

NEMORIO GUZMAN,

*Defendant-Appellant.*

>

Appeal from the United States District Court
for the Eastern District of Michigan at Flint
No. 03-50052—Paul V. Gadola, District Judge.

Argued: March 14, 2006

Decided and Filed: June 7, 2006

Before: NORRIS, SUHRHEINRICH, and ROGERS, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Darryl A. Goldberg, Chicago, Illinois, for Appellant. James C. Mitchell, ASSISTANT UNITED STATES ATTORNEY, Flint, Michigan, for Appellee. **ON BRIEF:** Darryl A. Goldberg, Ralph E. Meczyk, Chicago, Illinois, for Appellant. James C. Mitchell, ASSISTANT UNITED STATES ATTORNEY, Flint, Michigan, for Appellee.

---

**OPINION**

---

SUHRHEINRICH, Circuit Judge. A jury found Defendant Nemorio Guzman guilty of conspiracy to possess with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1), and for aiding and abetting the possession with intent to distribute 500 grams or more of cocaine, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1). Guzman appeals both his conviction and sentence on the ground that the district court's voir dire "indoctrinated" the entire panel with a belief that criminal defendants are usually guilty. For the reasons that follow, we **AFFIRM**.

## I.

On September 10, 2003, in Flint, Michigan, a joint team of officers from the Fraser Police Department and the Genesee County Drug Unit executed a search warrant at the residential address of Ernesto Aguilar. The officers recovered a total of four kilograms of cocaine.

1

Ramon Diaz, a resident of Chicago, was arrested shortly before the search warrant was executed as he and Jose Bustos were leaving the Aguilar residence in Guzman's vehicle. Guzman was arrested in the backyard of the Aguilar residence. On September 17, 2003, Diaz and Guzman were charged in a multiple count indictment with the illegal possession and distribution of cocaine.

Jury selection in the Guzman case began on July 26, 2004. During voir dire, while the jurors were seated together in the courtroom, the district court asked the potential jurors whether they had any prior personal experience with the criminal justice system. These experiences fell into three general categories: prior jury service, friends or family members who had been arrested, and victims of crime. The potential jurors acknowledged approximately twenty-one specific experiences.

When it received such a response, the district court followed up by asking each individual about the ultimate outcome of those experiences (i.e., conviction or no conviction). Guzman objected approximately seven times, arguing that a response made in front of the entire panel that the defendant in the prior, unrelated case had been convicted could contaminate all potential jurors into believing that most criminal defendants are guilty. The court sustained about half of the objections. For those it overruled or for which there was no objection, the potential jurors responded in front of the venire. In the end, the entire jury pool heard fifteen separate instances of unrelated criminal prosecutions, all but one of which resulted in a conviction.

Following a trial on the merits, the jury found Guzman guilty on both counts.

## II.

On appeal, Guzman contends that the nature of the district court's questioning during voir dire violated his constitutional right to an impartial jury. Specifically, Guzman argues that the potential jurors' responses to the questions about the guilt of other defendants contaminated the entire venire with a belief that most criminal defendants are guilty.

The Sixth Amendment guarantees an accused the right to be tried "by an impartial jury." U.S. Const. amend VI. The task of empaneling an impartial jury is left to the sound discretion of the district court, and we review a district court's voir dire of the jury venire for abuse of that discretion.[1] *United States v. Phibbs*, 999 F.2d 1053, 1071 (6th Cir. 1993). Only in the case of manifest error will we overturn a finding of juror impartiality. *Mu'Min v. Virginia*, 500 U.S. 415, 428 (1991).

We begin with the well-established presumption of juror impartiality, *see Irvin v. Dowd*, 366 U.S. 717, 723 (1961), as well as the equally important presumption that jurors followed the trial court's instructions, *United States v. Tines*, 70 F.3d 891, 898 (6th Cir. 1995). Here, when asked whether anything said during voir dire may have impaired his or her ability to remain impartial, not one potential juror answered in the affirmative. Also, the district court instructed the jurors to decide the case solely on the evidence presented at trial. Thus, both presumptions apply in this case.

Guzman has presented no evidence of actual juror bias to overcome these presumptions. *See generally Irvin*, 366 U.S. at 723; *United States v. Jobe*, 101 F.3d 1046, 1058 (5th Cir. 1996). Instead, his contention is in essence an argument that potential jurors' statements indicating guilt of other criminal defendants necessarily "indoctrinates" the entire venire with the belief that most criminal defendants are guilty, thereby overcoming the presumptions as a matter of law. We are unpersuaded.

---

[1] Only those questions to which Guzman objected are reviewed under this standard. Guzman's complaints about the remaining responses are reviewed for plain error. *See* Fed. R. Crim. P. 52(b); *United States v. Olano*, 507 U.S. 725, 731-32 (1993). We need not engage in plain error analysis, however, because, as explained *infra*, the district court committed no error.

Except in the most limited circumstances, none of which are relevant here, "[t]he United States Supreme Court has *not* established any per se rule which it requires trial judges to follow in the voir dire of a jury venire." *United States v. Blanton*, 719 F.2d 815, 822 (6th Cir. 1983) (en banc). In fact, the Supreme Court and this Court have implicitly rejected the per se rule Guzman advocates. *See Irvin*, 366 U.S. at 723 ("To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of . . . impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court."); *United States v. Maxwell*, 160 F.3d 1071, 1077 (6th Cir. 1998) ("Absent proof or documentation of prejudice, we do not assume that prejudice occurred."). We now do so expressly.

Rather than a per se rule, district courts are guided by the general standard that voir dire be tailored toward ensuring "a fair trial by a panel of impartial, 'indifferent' jurors."[2] *Irvin*, 366 U.S. at 722; *see also Morgan v. Illinois*, 504 U.S. 719, 729 (1992) (stating that "[t]he Constitution . . . does not dictate a catechism for voir dire, but only that the defendant be afforded an impartial jury"). Under this deferential standard, courts have not favored arguments like Guzman's. General statements about crime, the criminal justice system, and even the crimes charged are of no constitutional concern. For example, in *United States v. Hernandez*, 84 F.3d 931 (7th Cir. 1996), the defendant challenged the district court's denial of a motion to quash the entire venire where five venire members commented that the judicial system was ineffective in apprehending and punishing criminals, and where fifteen others expressed dissatisfaction with the outcomes of their own personal experiences with the criminal justice system. *Id.* at 936. When later asked whether any comments heard during voir dire would impair their ability to be impartial, the eventual jurors all responded in the negative. *Id.* Because the defendant offered nothing other than naked speculation to prove the statements biased the jury, the Seventh Circuit refused to disturb the district court's finding of impartiality. *Id.* In *United States v. Tegzes*, 715 F.2d 505 (11th Cir. 1983), the defendant was on trial on drug charges. During jury selection, a potential juror stated in front of the entire venire that her youngest son had overdosed on drugs before his eighteenth birthday. *Id.* at 506. The district court denied the defendant's motion for a mistrial. *Id.* The Eleventh Circuit affirmed, stating that such comments

> d[o] not constitute an opinion concerning the guilt or innocence of the defendants, nor d[o they] relate to knowledge about facts, parties, or witnesses involved . . . . Appellant's suggestion that mere awareness of the adverse consequences of crime induces bias toward the defendant is highly speculative and falls short of the potential actual prejudice which would mandate additional voir dire.

*Id.* at 508; *see also United States v. Vargas-Rios*, 607 F.2d 831, 837 (9th Cir. 1979) (rejecting the argument that a prospective juror's statement that convicted drug dealers should be imprisoned biased the entire venire, and stating that such an argument "borders on the frivolous"); *United States v. Gibson*, Nos. 75-1700, 75-1701, 1976 U.S. App. LEXIS 13527, at *1-2 (4th Cir. Jan. 2, 1976) (per curiam) (rejecting defendant's argument that statements that potential jurors or their family members had been victims of violent crimes tainted the entire venire).

Nor is there a problem when potential jurors announce their potential biases. *See United States v. Olaseinda*, No. 96-4576, 1997 U.S. App. LEXIS 11365, at *2-3 (4th Cir. May 15, 1997)

---

[2]Our review reflects the discretion accorded to district courts. As the Supreme Court has stated:
Despite its importance, the adequacy of voir dire is not easily subject to appellate review. The trial judge's function at this point in the trial is not unlike that of the jurors later on in the trial. Both must reach conclusions as to impartiality and credibility by relying on their own evaluations of demeanor evidence and of responses to questions. In neither instance can an appellate court easily second-guess the conclusions of the decisionmaker who heard and observed the witnesses.
*Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981) (plurality opinion) (citation omitted).

(per curiam) (rejecting defendant's argument that the entire venire was contaminated by a prospective juror's statement, based on her experiences as a juror in other cases, that a defendant on trial is probably guilty); *United States v. Buchanan*, 787 F.2d 477, 480 (10th Cir. 1986) (affirming a district court's refusal to dismiss the entire venire after hearing statements from one potential juror that he may not be able to remain impartial because his home had recently been vandalized), *overruled in part on other grounds by United States v. Welch*, 928 F.2d 915 (10th Cir. 1991); *United States v. Jones*, 696 F.2d 479, 491-92 (7th Cir. 1982) (finding no error in a district court's decision not to dismiss any other juror after one potential juror stated that a defendant's decision not to testify may affect his judgment as to guilt, and another potential juror stated that a newspaper report would likely affect his judgment).

Even disclosure of the *defendant's* prior criminal prosecutions does not require a mistrial. For example, in *United States v. Shropshire*, 498 F.2d 137 (6th Cir. 1974), we found no error in a district court's denial of Shropshire's motion to dismiss an entire venire after a potential juror referenced Shropshire's prior criminal activity of which the potential juror had personal knowledge. *Id.* at 139.

We found only one case where comments by potential jurors not directly related to the defendant in the case at bar[3] rose to the level of presumed prejudicial error, and it bears no resemblance to the facts in this case. In *Mach v. Stewart*, 137 F.3d 630 (9th Cir. 1997), the defendant was on trial for the sexual abuse of a minor. *Id.* at 631. During voir dire, a prospective juror stated in front of the entire venire that she had worked for many years as a social worker, had taken psychology courses, and had worked closely with psychologists and psychiatrists. *Id.* at 632. She stated that she would have a difficult time remaining impartial, because every one of her client's allegations of sexual assault was later confirmed. *Id.* The trial court further questioned the potential juror on the matter, during which the potential juror responded at least three more times that she had never known a child to lie about having been sexually assaulted. *Id.* The trial court struck her for cause, but denied the defendant's motion for a mistrial. *Id.* On appeal, the Ninth Circuit granted a writ of habeas corpus, stating:

> At a minimum, the [trial] court should have conducted further voir dire to determine whether the panel had in fact been infected by [the] expert-like statements. Given the nature of [the] statements, the certainty with which they were delivered, the years of experience that led to them, and the number of times they were repeated, we presume that at least one juror was tainted and entered into jury deliberations with the conviction that children simply never lie about being sexually assaulted.

*Id.* at 632-33. Critical to the ruling in *Mach* was the "expert-like" nature of the statements and the fact that the potential juror-"expert" vouched for the credibility of the prosecution's key witness. The statements were "highly inflammatory and directly connected to [the defendant]'s guilt." *Id.* at 634. None of these factors is present in Guzman's case.

Instead, Guzman's challenge relies entirely on speculation as to the effect, if any, the potential jurors' statements had on the actual jurors. Like *Hernandez*, the district court here asked every juror whether there was any reason that he or she would be unable to be impartial and decide the case solely on the evidence presented, and, like *Hernandez*, every juror in this case affirmed an

---

[3] The so-called "publicity" cases are *sui generis*, because they involve knowledge of or statements about the case and defendant on trial. Appellate courts have been slightly more receptive to claims of juror partiality in these contexts. *See, e.g.*, *Rideau v. Louisiana*, 373 U.S. 723, 726 (1963); *Irvin*, 366 U.S. at 722-28; *United States v. Stratton*, 649 F.2d 1066, 1081-83 (5th Cir. 1981).

ability to remain fair.[4]  Like *Tegzes*, the statements at issue here did not regard "the guilt or innocence of the defendant[], nor did [they] relate to knowledge about facts, parties, or witnesses involved." *Tegzes*, 715 F.2d at 508. Moreover, unlike *Tegzes* and *Hernandez*, where the statements made in front of the venire expressed potential jurors' *actual* biases, Guzman is merely challenging potential jurors' statements of fact that have no tendency to show bias. And unlike *Shropshire*, where a prospective juror commented on the *defendant's* criminal history, all of the statements here concerned the guilt of *other* criminal defendants. In other words, Guzman's challenge is even weaker than many of these other unsuccessful challenges.

Furthermore, a per se rule would effectively require in camera voir dire of every potential juror in every criminal case. If certain solicited responses have the per se effect of contaminating the venire, we would also have to conclude that similar *volunteered* statements would have the same impact. Experience teaches that potential jurors regularly offer more information than the court or counsel requests. Therefore, trial courts would need to conduct the entire process in camera to prevent the risk of complete venire contamination from innocent, extraneous remarks. *See Mu'Min*, 500 U.S. at 425 (noting that acceptance of a claim that defendants have a constitutional right to question potential jurors as to the nature and extent of their exposure to pretrial publicity "would require that each potential juror be interrogated individually"). Such a requirement would cripple the trial process. Even without in camera voir dire, jury selection in some cases can last anywhere from several days to several months. Entirely in camera voir dire would only lengthen the process–without any corresponding benefit.

In the event that statements about the guilt of other criminal defendants are not per se prejudicial, Guzman argues that inquiries into the outcomes of unrelated criminal matters are improper as irrelevant. We disagree. One of the primary purposes of voir dire is to aid counsel in their exercise of peremptory challenges. *Mu'Min*, 500 U.S. at 431. Potential jurors' responses about the outcomes of cases with which they have had personal experience are certainly relevant to the discovery of potential and actual biases. This is true even if the statements of fact are not themselves biased. *See Hughes v. United States*, 258 F.3d 453, 459 (6th Cir. 2001) (noting that because jurors rarely express their biases, trial courts almost always make partiality determinations based on circumstantial evidence).

Alternatively, Guzman suggests that this type of questioning be conducted in camera. For the reasons discussed above, there is no need for such precautionary measures. As this Court has stated previously, this approach is an effective and efficient means of empaneling an impartial jury. *See Phibbs*, 999 F.2d at 1071 (concluding that the district court's questioning of potential jurors *en masse* about their impressions of the criminal justice system, any predispositions they might have about the type of prosecution at issue, whether they had prior jury experience, and whether they had ever been the victim of a crime, efficiently "served to establish that the individuals who were ultimately selected as jurors were unbiased").

In addition, voir dire in front of the entire jury pool may actually result in more effective screening. Potential jurors are often emboldened to be more candid after witnessing other potential jurors' voir dire. When asked whether they have any personal experiences with the criminal justice system, for example, many are initially reluctant to respond out of embarrassment or self-consciousness until they hear their counterparts admit to similar experiences. Relatedly, hearing the responses of other potential jurors frequently triggers memories of similar experiences that the potential jurors may not have recalled otherwise. Thus, conducting the process before the entire panel can actually lead to more open and thorough voir dire.

---

[4]Of course, a prophylactic measure is not required. *See Tegzes*, 715 F.2d at 506-09 (affirming the district court's refusal to give a special jury instruction regarding a potential juror's biased statements out of concern that such an instruction would cause the jurors to consider an issue that would not otherwise have been on their minds).

In short, Guzman's proposals are unworkable and contrary to precedent.

### III.

The jurors in Guzman's trial all stated that they were capable of being fair and impartial and of deciding the case solely on the evidence presented at trial. The district court, in its broad discretion, found the jurors to be impartial. There is simply nothing in the record or case law that would allow us to disturb that finding.

The judgment of the district court is **AFFIRMED.**