NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0527n.06

**FILED**
Sep 13, 2017
DEBORAH S. HUNT, Clerk

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

DAVID A. GUY,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

BEFORE:    KEITH, BATCHELDER, and GRIFFIN, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.** After David Guy's niece accused him of sexually molesting her when she was between six and ten years old, law enforcement began an investigation. Police executed a search warrant at his home and discovered thousands of images of child pornography, as well as obscene images that he had created. A grand jury indicted him for attempted production of child pornography, possession and receipt of child pornography, and obscene visual representation of the sexual abuse of children. Guy went to trial, where a jury convicted him of the indicted offenses despite his defense that the images were art. The district court sentenced him to 1,020 months' imprisonment. In this direct appeal, he raises issues concerning the sufficiency of the evidence against him, the fairness of his trial, the admission of certain evidence, the jury instructions, and juror bias. Finding no merit to any of his claims, we AFFIRM his conviction and sentence.

I

In September 2014, authorities in Clermont County, Ohio, began an investigation of David Guy based on information reported to them by his then-seventeen-year-old niece. The niece, known in this case as "Minor 1," alleged that Guy had sexually molested her when she was between six and ten years old, and Guy was eventually convicted of gross sexual imposition by an Ohio jury. As part of the investigation, Investigator Lori Saylor initiated a controlled phone call between Guy and his sister, Minor 1's mother. During the call, Guy stated that he had taken nude photographs of Minor 1. Authorities executed a search warrant at his home and seized his computers and a detached hard drive. Police also seized CDs, DVDs, drawings, and sketch pads. The CDs contained over 25,000 sexually explicit images of children, and the drawings included sexually explicit depictions of children. A forensic search of Guy's computers indicated that they contained an enormous number of pornographic images of children.[1]

Among the thousands of images of child pornography recovered from Guy's computers, hard drive, and discs, some images warrant additional discussion in light of the issues raised in this appeal. First, the discs included images of a pedophile's mascot known as "Pedo Bear." These images bore captions that encouraged the viewer's sexual interest in children. For example, one such caption stated, "Carpe Diem. You're in her bedroom. Her mom is gone for the day. She won't tell."

Second, some of the images found on the discs depicted Guy's minor female relatives. These images included innocuous family pictures that he took at family functions. But some of these innocuous images were used in more nefarious ways. He digitally manipulated various

---

[1] A forensic investigator testified at trial that he stopped indexing potential child pornography when he reached 1,000 images. He estimated that there could have been thousands more.

images by, for example, imposing a minor's face onto another pornographic photograph. Some of these manipulated images included his face, and some also had sexually explicit captions, which he authored. These captions—which sometimes referred to either the child or Guy by name—encouraged sexual activity with and interest in children. Eleven different minor females appeared throughout this category of digitally manipulated images.

Third, investigators discovered an image of Minor 1 when she was approximately eight years old. The image showed her on Guy's bed wearing a black and red lace nighty and striped socks but no underwear. She had been posed on her hands and knees and photographed from behind. Although the image did not display her genitals, the costume was hiked up to expose her bare buttocks. The image bore a caption written in the first person, as if Minor 1 were the speaker: "My well-f***ed cu[**] is dripping with Uncle's hot cum. He f***s me every day."[2]

The grand jury indicted Guy on eleven counts of the obscene visual representation of the sexual abuse of children, in violation of 18 U.S.C. § 1466A(a)(1), (d)(4) (Counts 1–11); one count of production and attempted production of child pornography, in violation of 18 U.S.C. § 2251(a), (e) (Count 12); three counts of receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2), (b)(1) (Counts 13–15); and one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4), (b)(2) (Count 16). The obscenity charges arose from the digitally manipulated photos. The attempted-production charge arose from the image of Minor 1. The receipt-and-possession charges arose from the other images of child pornography that Guy obtained from the internet.

---

[2] Investigator Saylor testified that members of Guy's family would refer to him as "Uncle" or "Uncle Dave."

A

The district court made several pre-trial evidentiary rulings that Guy challenges on appeal.

Guy's defense to the obscenity and attempted-production-of-child-pornography charges included a First Amendment argument that the images were "subversive" art. To that end, he sought to introduce evidence that would help define the "contemporary community standards," which is an element of the legal test for whether material is obscene, as defined by *Miller v. California*, 413 U.S. 15, 24 (1973). The evidence—an exhibit at the Cincinnati Contemporary Arts Center—featured local artists' responses to a Cincinnati curator's past obscenity charge for displaying images created by the artist Robert Mapplethorpe. The exhibit contained images depicting nudity, including two images of nude children. Guy moved to allow a jury view of the exhibit, but the district court denied the motion. After the government rested its case, Guy sought to introduce two images from a book purchased at the gift shop of the Contemporary Arts Center. The district court did not admit this evidence, either.

Guy also filed a motion in limine to exclude various images that celebrated pedophilia, including the Pedo Bear memes, which were found on the discs in his home. He argued that he became aware of this evidence for the first time shortly before he filed the motion and that it was improper "other acts" evidence precluded under Federal Rule of Evidence 404(b), which prohibits the use of such evidence to prove a person's character. The government had not filed a Rule 404(b) notice concerning this evidence. Nevertheless, it argued that there was no notice defect because it had told Guy which of Guy's discs it might use at trial, and those discs contained the evidence he sought to exclude. The government also stated that it had "specifically pointed out these materials" to the defense more than two weeks before trial. Finally, the

government argued that the evidence was not the sort of "bad acts" evidence precluded by Rule 404(b), but rather "an admission or an adoption of a particular lifestyle." The district court excluded certain items, but denied the motion in limine as to the pedophilia-related materials, finding that they "go to motive, opportunity, intent, plan, knowledge, a lot of the things listed in [Rule] 404(b)." Guy renewed his objection following this ruling, arguing that the government failed to provide notice under Rule 404(b). The district court overruled the objection, holding that the government had provided the evidence in advance of trial.

Pursuant to Federal Rule of Evidence 414, the government provided notice of its intent to introduce evidence of Guy's prior state conviction for gross sexual imposition, which Guy opposed. Before trial, the district court indicated that its "strong inclination . . . [was] to exclude that evidence." The district court noted, however, that, "if during the cross-examination of Minor Number 1 it becomes relevant, the Court may very well change its ruling." Guy's counsel stated that it understood "that if we open the door, that would happen." Before Minor 1 testified, the district court reminded defense counsel of that ruling, at which point Guy's counsel did not object.

B

During voir dire, four prospective jurors made statements indicating that they might not be fair and unbiased. Juror 11 indicated that Guy's decision not to testify might imply that he had "something to hide." Juror 29 stated at a sidebar conference that his or her religion taught that pornography is a sin, but that he or she could follow the district court's instructions concerning evidence. Juror 49 indicated agreement with statements that images of nude children could never be considered art and that the juror could not be objective. Finally, Jurors 29 and 83 agreed with a statement that they would not be able to set aside their personal beliefs and

opinions to consider the contemporary community standards. Guy challenged these four prospective jurors for cause, but the district court denied the challenges. He therefore used peremptory challenges against Jurors 11 and 29. Jurors 49 and 83 did not sit on the jury.

C

The government's evidence at trial included the various categories of images described above. Minor 1, the niece who was the subject of the image underlying the attempted production of child pornography count, also testified. Although that image did not depict her genitals, Minor 1 testified that Guy had photographed her on other occasions when she was between the ages of six and ten. She stated that, in these other photographs, she would occasionally wear costumes that he had given her and that he took some photos where she wore no clothing at all. She also testified that Guy had taken pictures of her genitals when her legs were spread open, and that he had told her not to tell anyone that he had taken these pictures. Defense counsel cross-examined Minor 1 about the preparation she received from the government before trial, including her viewing of the photographs used at trial.

After the government rested its case, Guy moved for a directed verdict, which he renewed upon concluding his own case. He argued that the government's evidence had created a prejudicial variance from the indictment, because the charge rested on the image of Minor 1 but the evidence included both the image and her testimony. After comparing the indictment language ("that between January 1, 2004 and December 31, 2006, the defendant attempted to produce child pornography") and Minor 1's testimony that Guy had taken nude pictures of her between the ages of six and ten, the district court found that there was no variance and denied the motion.

D

Guy objected to the jury instructions for Count 12, the attempted production of child pornography. After the government proposed that the district court use Sixth Circuit Pattern Jury Instruction § 16.01 for this Count, Guy sought to remove the definition of the term "lascivious" from the pattern instruction's definitions section. The pattern instruction for production of child pornography provides that an element of that offense is that "the defendant used a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct." Sixth Circuit Pattern Jury Instructions § 16.01, *Sexual Exploitation of Children: Using a Minor to Engage in Sexually Explicit Conduct to Produce a Visual Depiction*. The pattern instructions further provide various definitions and instructions, including a definition of "sexually explicit conduct" that includes the "lascivious exhibition of the genitals or pubic area of a person." To determine if an image contains a lascivious exhibition, the instruction tells that jury that it

> may consider these six factors: (1) whether the focal point of the visual depiction is on the child's genitalia or pubic area; (2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity; (3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child; (4) whether the child is fully or partially clothed, or nude; (5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; and (6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer. This list is not exhaustive, and an image need not satisfy any single factor to be deemed lascivious. Instead, you must determine whether the visual depiction is lascivious based on its overall content. It is for you to decide the weight or lack of weight to be given any of these factors.

*Id.* Guy objected to the use of these six factors—known as the *Dost* factors after *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986)—on the ground that lasciviousness should only be at issue when the image displays genitals or the pubic area. The district court rejected this analysis and instructed the jury in accordance with the pattern instruction.

The jury convicted Guy on all sixteen counts, and the district court sentenced him to 1,020 months' imprisonment followed by twenty years' supervised release. Following the entry of judgment by the district court, Guy timely appealed.

II

A

We begin with Guy's challenge to the sufficiency of the evidence used to convict him of the attempted production of child pornography. We review de novo a challenge to the sufficiency of evidence used to convict a defendant, viewing "the evidence in the light most favorable to the prosecution" and affirming if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Lowe*, 795 F.3d 519, 522 (6th Cir. 2015) (quoting *United States v. Washington*, 715 F.3d 975, 979 (6th Cir. 2013) (citation omitted)); *see also Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). "A convicted defendant bears a very heavy burden to show that the government's evidence was insufficient." *United States v. Tragas*, 727 F.3d 610, 617 (6th Cir. 2013) (internal quotation marks and citation omitted).

Federal law prohibits the use of "any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct." 18 U.S.C. § 2251(a). Section 2256(2)(A)(v) defines "sexually explicit conduct" as including the "lascivious exhibition of the genitals or pubic area of any person." The grand jury indicted Guy for the attempted production of child pornography in violation of § 2251(a). To obtain a conviction on the attempt charge, the government must prove that he intended to create child pornography and that he took a substantial step toward doing so. *United States v. Sims*, 708 F.3d 832, 835 (6th Cir. 2013).

The image underlying the attempted production of child pornography count was the image of Minor 1, in which she was posed on Guy's bed. The image did not display her genitals, but it did show her exposed buttocks. In addition to her being partially nude, the image bore a caption that both referred to her genitals and discussed sexual activity in vile terms. Guy argues that because the image did not display Minor 1's genitals, it was not an image of sexually explicit conduct, and therefore he could not have intended to create child pornography. The government responds that the image alone was sufficient evidence for the jury to infer that he intended to produce a lascivious exhibition of genitals or the pubic area. Even if we have our doubts about the government's position, we need not resolve them here, because the image did not appear in evidence in isolation. Having reviewed the record as a whole, we find that two facts, taken together with the image of Minor 1, allow us to conclude that a rational juror could find Guy guilty of attempting to produce child pornography. *See Jackson*, 443 U.S. at 319; *see also United States v. Vanderwal*, 533 F. App'x 498, 501 (6th Cir. 2013). First, Minor 1 testified that Guy had, on other occasions, taken nude photographs of her that depicted her genitals. Second, the image did not solely depict Minor 1. It also bore an obscene caption that demonstrated Guy's prurient intent behind creating the image. Notably, this caption specifically referred to the child's genitals, even though the picture did not display them.

Guy argues that because he crafted the image to avoid displaying Minor 1's genitals or pubic area, the image could not be used to demonstrate that he intended to depict sexually explicit conduct. We have previously rejected this sort of "circular logic." *Vanderwal*, 533 F. App'x at 502. In *Vanderwal*, the defendant took a video in his bathroom of young girls related to him. Although the video, which showed genitals, was not itself lascivious, it was sufficient, taken in context with other evidence, to demonstrate that he intended to create a lascivious video.

*Id.* The government proved Vanderwal's intent by pointing to his collection of child pornography, a fantasy story he had written about a sexual relationship between a grandfather and a granddaughter, and the way he set up the camera in the bathroom to capture the naked children. *Id.* In short, the fact that an image underlying a charge of attempted violation of 18 U.S.C. § 2251 is not lascivious does not mean that a defendant did not intend to create a lascivious image.

The contextual evidence here was sufficient to support the attempt conviction. Among other things, this evidence included the caption on the photo and Minor 1's testimony that Guy had taken photos of her genitals at other times. As *Vanderwal* teaches, it is "circular logic" to suggest that Guy could not have intended to create a lascivious image simply because the image itself does not contain genitals or the pubic area. *Id.* From the evidence presented, the jury could conclude that he had the intent to commit the attempted-production offense.

Having established that Guy possessed the specific intent necessary to convict him of attempted production of child pornography, we also readily conclude that he took a substantial step toward doing so. The photograph of Minor 1 was not a candid picture taken by a doting uncle. Instead, Guy dressed and posed Minor 1 and added the caption to the image. Accordingly, we hold that the evidence was sufficient to convict Guy of this offense.

B

Guy also argues that the government's proof for the attempted-production charge caused a prejudicial variance with the indictment. We review de novo whether a variance occurred and reverse if the variance affected a defendant's substantial rights. *United States v. Caver*, 470 F.3d 220, 235 (6th Cir. 2006). "A variance 'occurs when the charging terms [of the indictment] are unchanged, but the evidence at trial proves facts materially different from those alleged in the

indictment.'" *United States v. Kuehne*, 547 F.3d 667, 683 (6th Cir. 2008) (quoting *United States v. Prince*, 214 F.3d 740, 757 (6th Cir. 2000)). The indictment alleged that Guy "attempted to . . . use . . . a minor, to wit Minor 1, to engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct." The proof included both the image of Minor 1 and the aforementioned contextual evidence from which a jury could (and did) infer that he intended to create child pornography. There was no variance. *See id.* at 686 ("The presentation of additional evidence to substantiate charged offenses, however, does not constitute facts materially different from those charged in the indictment.").

## III

Guy challenges his conviction on eleven counts of the obscene visual representation of the sexual abuse of children by arguing that the district court's refusal to permit the jury view of the Mapplethorpe exhibit and the admission of the art-exhibit book, and the court's rulings with regard to the cross-examination of Minor 1 prevented him from having a fair trial. The parties dispute the applicable standard of review. Claiming that the evidentiary rulings violated his constitutional right to present a full defense, Guy asks that we review the evidentiary issues de novo. The government, on the other hand, requests that we review these issues for abuse of discretion. Our case law provides support for both of these conflicting standards. *Compare United States v. Reichert*, 747 F.3d 445, 453 (6th Cir. 2014) ("Where a defendant attacks an evidentiary ruling as violating the Sixth Amendment, review of the legal aspects of the constitutional violation is de novo.") (citation omitted) *with United States v. Schreane*, 331 F.3d 548, 564 (6th Cir. 2003) ("An appellate court reviews all evidentiary rulings—including constitutional challenges to evidentiary rulings—under the abuse-of-discretion standard.") (citation omitted). As we have noted, however, "the abuse of discretion standard is not at odds

with de novo interpretation of the Constitution inasmuch as [a] district court does not have the discretion to rest its evidentiary decisions on incorrect interpretations of the Constitution." *United States v. Blackwell*, 459 F.3d 739, 752 (6th Cir. 2006). Here, Guy raised his claims concerning the art exhibit in constitutional terms, so we review that aspect of his appeal under the de novo standard of review.

However, failure to preserve an evidentiary issue, even an evidentiary issue that affects a constitutional right, results in a plain-error standard of review. *See United States v. Collins*, 799 F.3d 554, 584–85 (6th Cir. 2015). Guy failed to object to the district court's ruling on the cross-examination of Minor 1, so we review that aspect of his appeal for plain error.

A defendant has a constitutional right to "a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). But this does not provide "an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Blackwell*, 459 F.3d at 753 (quoting *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996)). Exclusion of evidence may violate the right to a fair trial if the exclusion is arbitrary or disproportionate. *Holmes*, 547 U.S. at 324–26. And even if the district court's exclusion of the evidence was erroneous, this court examines "whether the omitted evidence evaluated in the context of the entire record creates a reasonable doubt that did not otherwise exist." *Blackwell*, 459 F.3d at 753 (internal quotation marks, citation, and alteration omitted).

A

Guy defends against the charges for the obscene visual representation of the sexual abuse of children by claiming that the images he created were works of art and not obscene at all. To that end, he sought to demonstrate that his images fell within the contemporary community

standards[3] by requesting a jury view of an exhibit, which contained nudity, at the Cincinnati Contemporary Arts Center. Jury views help the jury understand the litigation and are used when "the requisite information cannot be introduced any other way." *See United States v. Simmons*, 174 F. App'x 913, 918 (6th Cir. 2008). The district court did not permit the jury view and later declined Guy's request to introduce the exhibit's companion book into evidence. The exclusion of this evidence was neither arbitrary nor disproportionate. The exhibit bore little relevance to the crimes for which Guy was on trial. Out of 120 images in the exhibit, only two images showed children. On this point alone, the exhibit's relevance was far from clear. Even if Guy had offered only the two nude depictions of children as evidence, the evidence would not be probative of the question of whether his altered images depicting sexual fantasies with his minor female relatives were obscene. Nor did the exclusion of the evidence preclude him from introducing other evidence about contemporary community standards, should he have chosen to do so. The district court did not err by denying a jury view on the ground that it was not relevant.

Guy also protests the district court's exclusion of a book of the art exhibit, which Guy's counsel purchased from the museum gift shop. The district court explained that allowing the introduction of two images portraying children in the book would confuse the jury by focusing on pictures that did not necessarily reflect the community standards. This was a decision well within the district court's discretion under Federal Rule of Evidence 403, which permits a court to exclude evidence if the "probative value is substantially outweighed by a danger of confusing

---

[3] "To determine whether something is obscene, the *Miller–Ginsberg* test [that we apply] asks: '(a) whether the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.'" *Am. Booksellers Found. for Free Expression v. Strickland*, 601 F.3d 622, 624 (6th Cir. 2010) (quoting *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 872 (1997)).

the issues [or] misleading the jury." The defendant does not have an unfettered right to admit all evidence, *Blackwell*, 459 F.3d at 753, and the district court did not err by refusing to admit the book of the exhibit into evidence.

B

Guy also argues that the district court violated his right to cross-examine the witnesses against him. He claims that the district court "threatened" him when it said that if he impeached Minor 1's credibility during cross-examination, then his prior conviction for gross sexual imposition, which the district court had held inadmissible, might become relevant. Defense counsel did cross-examine Minor 1, and during the course of the cross-examination, was able to challenge her credibility in several ways. For instance, his questions demonstrated that Minor 1 had received preparation for her testimony from the government.

The Constitution's Confrontation Clause "guarantees an *opportunity* for effective cross-examination," which Guy received. *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). It does not guarantee "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.* Guy exercised the opportunity guaranteed by the Constitution and did so effectively. In any event, the district court's reminder to Guy's counsel was not a threat. "When one party has opened the door on an issue, by eliciting prejudicial or inadmissible testimony, an opponent, in the court's discretion, may introduce evidence on the same issue to rebut any false impression that might have resulted from the earlier admission." *United States v. Segines*, 17 F.3d 847, 856 (6th Cir. 1994) (internal quotation marks, citation, and alterations omitted). This recitation of a basic trial principle did not deprive Guy of his right to confront Minor 1. There was no error—let alone plain error—in the district court's ruling.

IV

Guy's next argument also requires an analysis of the district court's evidentiary determinations. The district court allowed the government to use certain images related to pedophilia, such as the images of Pedo Bear, at trial. The images that Guy possessed included captions encouraging the viewer's interests in pedophilia. Guy had sought to exclude these images before trial, arguing that they were inadmissible character evidence under Federal Rule of Evidence 404. The district court disagreed and found that the images went "to motive, opportunity, intent, plan, knowledge, a lot of the things listed in [Rule] 404(b)." On appeal, Guy argues that (1) he did not have notice of the government's intent to use Rule 404(b) evidence, and (2) that the images were inadmissible.

Generally, we review the district court's evidentiary determinations for abuse of discretion. *United States v. Perry*, 438 F.3d 642, 647 (6th Cir. 2012). There is, however, a dispute in this circuit about how this standard of review plays out in Rule 404(b) cases. *See United States v. Carter*, 779 F.3d 623, 625 (6th Cir. 2015). Some panels apply abuse-of-discretion review at all stages of the analysis, but other panels employ a mixed-standard test. *See id.*; *see also Perry*, 438 F.3d at 647 ("In the specific context of Rule 404(b), we employ a three-part test: (1) we first review for clear error a district court's determination that the other act took place, (2) we then conduct a de novo review of the district court's legal determination that the evidence was admissible for a proper purpose, and (3) we review for abuse of discretion the district court's determination that the probative value of the other acts evidence is not substantially outweighed by its unfairly prejudicial effect.") (quotation marks and citation omitted). We do not need to resolve this conflict here, however, because Guy's claim fails under

either approach. *See Carter*, 779 F.3d at 625 (finding that defendant prevailed under either approach).

Rule 404 prohibits the use of "[e]vidence of a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). If, however, the evidence has "another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," it "may be admissible." Fed. R. Evid. 404(b)(2). "Evidence of other acts is probative of a material issue other than character if (1) the evidence is offered for an admissible purpose, (2) the purpose for which the evidence is offered is material or 'in issue,' and (3) the evidence is probative with regard to the purpose for which it is offered." *United States v. Haywood*, 280 F.3d 715, 720 (6th Cir. 2002). If the defendant requests it, the government "must . . . provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial." Fed. R. Evid. 404(b)(2)(A).

We begin with Guy's argument that the government failed to provide notice of its intent to use the images celebrating pedophilia as Rule 404(b) evidence. The parties do not dispute that Guy properly requested notification of the government's intent to use such evidence or that the government did not provide written notification of its intent to use the specific images. Before trial, Guy discovered that the government planned to use the pedophilia-related evidence, so he filed a motion in limine characterizing the images as Rule 404(b) character evidence. The government argued that it did not consider the evidence to be Rule 404(b) evidence, but asserted that it had provided access to the discs seized from Guy's home, which contained the evidence, throughout the case's discovery period. Based on the parties' arguments, the district court held

that Guy had sufficient actual notice of the images because they were on the discs containing the evidence the government planned to use at trial.

Rule 404(b) requires notice to be reasonable, and a district court has discretion to determine reasonableness based on the circumstances. *See United States v. Barnes*, 49 F.3d 1144, 1147 (6th Cir. 1995). Even if we might question the government's argument that it did not believe the evidence was "other acts" evidence, we agree with the district court that Guy had sufficient notice that the images would be introduced. *Cf. United States v. Basham*, 561 F.3d 302, 327 n.12 (4th Cir. 2009); *United States v. Erickson*, 75 F.3d 470, 478 (9th Cir. 1996). The government notified Guy that it planned to use the images found on the discs in his home, and these pedophilia-related images were on those discs. Moreover, Guy himself raised the issue before trial. The district court did not abuse its discretion by finding the notice requirement satisfied under these circumstances.

We also hold that the district court did not err by admitting into evidence the images relating to pedophilia. At issue is whether the district court erred by holding that the evidence was introduced for a permissible purpose under Rule 404(b). Guy argues that the district court failed to articulate why the images were permissible, and the government counters that the images demonstrated a sexual interest in children, which is probative of the offenses for which Guy was charged and convicted. We agree with the government. The images and their existence on Guy's computer are probative of his sexual interest in children, which is directly related to the charges of production, receipt, and possession of child pornography and the obscene visual representation of the sexual abuse of children. In a similar context, we have stated that the possession of child erotica can "support an inference of a sexual interest in children." *United States v. Hentzen*, 638 F. App'x 427, 434 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 1225 (2016).

The same principle applies here. The pedophilia-related images were found on the same discs containing the images underlying the offenses for which Guy was indicted, and the evidence was closely related to those offenses. The images were therefore permissible evidence.

Moreover, beyond stating that the images "did nothing more than cast [him] in a perverted light," Guy does not articulate how the probative value of the evidence was substantially outweighed by its prejudicial effect. Under such a showing, evidence deemed admissible under Rule 404(b) may be excluded pursuant to Rule 403. Because we have concluded that the Pedo Bear images were probative evidence of the indicted offenses, it necessarily follows that the images had a broader purpose than merely casting Guy in a perverted light. And any prejudice he faced by the images was a result of the images' probative force, not because the evidence allowed the jury to rest its decision "on an improper basis." *United States v. Mendez-Ortiz*, 810 F.2d 76, 79 (6th Cir. 1986). The use of these images was not unfairly prejudicial, and we find no error in the district court's refusing to exclude the images.

V

Next, Guy argues that the district court improperly instructed the jury on the count for the attempted production of child pornography. We review challenges to jury instructions for abuse of discretion, assessing "the instructions as a whole, in order to determine whether they adequately informed the jury of the relevant considerations and provided a basis in law for aiding the jury in reaching its decision." *United States v. Russell*, 595 F.3d 633, 642 (6th Cir. 2010) (quoting *United States v. Frederick*, 406 F.3d 754, 761 (6th Cir. 2005)). "A judgment may be reversed based upon an improper jury instruction 'only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial.'" *Id.* (quoting *Kuehne*, 547 F.3d at 669).

"We regularly look to whether jury instructions mirror or track the pattern instructions as one factor in determining whether any particular instruction is misleading or erroneous." *United States v. Damra*, 621 F.3d 474, 499 (6th Cir. 2010). Here, the district court's jury instructions followed the Sixth Circuit pattern jury instructions and described the proper elements for both attempt and production of child pornography. One element of the production charge is that "the defendant used a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct." *See* Sixth Circuit Pattern Jury Instr. § 16.01. The pattern instructions further define "sexually explicit conduct" as including the "lascivious exhibition of the genitals or pubic area of a person."

We consider six factors to be relevant in determining whether a depiction is "lascivious," although this list is "neither comprehensive nor necessarily applicable in every situation." *United States v. Daniels*, 653 F.3d 399, 407 (6th Cir. 2011) (quoting *United States v. Brown*, 579 F.3d 672, 680 (6th Cir. 2009)). These factors are:

> 1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
>
> 2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;
>
> 3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
>
> 4) whether the child is fully or partially clothed, or nude;
>
> 5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;
>
> 6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*Id.* These six factors are known as the *Dost* factors. *See Brown*, 579 F.3d at 682 (citing *Dost*, 636 F. Supp. at 832).

Guy argues that the district court's decision to include the *Dost* factors, which are enumerated in the pattern jury instructions, was erroneous. Essentially, he claims that the image underlying the attempted-production charge must display genitals or the pubic area as a condition precedent to the applicability of the *Dost* factors. This position demonstrates a fundamental misunderstanding of the attempt aspect of the charged offense. The question is not whether the images he created "were lascivious." *Vanderwal*, 533 F. App'x at 501. Rather, the question for the jury was whether "he had the specific intent to create a lascivious [image]." *Id.*

The inclusion of the *Dost* factors gave the jury information—in this case, the legal definition of "lasciviousness"—necessary for it to determine whether Guy attempted to use a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of sexually explicit conduct. Sexually explicit conduct includes lascivious exhibitions of the genitals or pubic area of a person, and the *Dost* factors help frame this analysis. As we have already explained, the fact that the image underlying the attempted-production-of-child-pornography count did not depict Minor 1's genitals or pubic area is not dispositive of the question of whether Guy attempted to produce a visual depiction of sexually explicit conduct. Accordingly, we hold that the district court's jury instructions adequately informed the jury of the relevant considerations under the law, *Russell*, 595 F.3d at 642, and that the court did not err by refusing to omit the *Dost* factors from the jury instruction.

VI

Finally, Guy argues that, at voir dire, four jurors made statements demonstrating that they could not be impartial. Because empaneling an impartial jury is a task "left to the sound

discretion of the district court," we review a challenge to the district court's voir dire for an abuse of that discretion. *United States v. Guzman*, 450 F.3d 627, 629 (6th Cir. 2006). There was no such abuse here. None of the four jurors Guy discusses sat on the jury, and he makes no claim that any juror who actually sat on the jury was biased. Therefore, his only claim is that he needed to use his peremptory challenges to remove potentially biased jurors.

Supreme Court precedent forecloses this claim. Peremptory challenges are an important part of "a defendant's right to trial by an impartial jury," but they are "auxiliary" and "not of federal constitutional dimension." *United States v. Martinez-Salazar*, 528 U.S. 304, 311 (2000) (citations omitted). "[A] defendant's exercise of peremptory challenges pursuant to Rule 24(b) is not denied or impaired when the defendant chooses to use a peremptory challenge to remove a juror who should have been excused for cause." *Id.* at 317; *see also United States v. Lawrence*, 735 F.3d 385, 444 (6th Cir. 2013) ("[I]f a defendant exercises a peremptory challenge to remove a juror the district court refused to excuse for cause, and does not allege that a biased juror sat on the jury or that he needed more peremptory challenges, he has not been deprived of his procedural or constitutional rights."). This claim is without merit.[4]

## VII

Guy has not demonstrated that the district court committed any error that warrants reversing his conviction or sentence. Accordingly, we AFFIRM the judgment of the district court.

---

[4] Guy tendered supplemental briefing raising additional issues on appeal not raised by his appellate counsel. We decline to address these pro se arguments. *See United States v. Williams*, 641 F.3d 758, 770 (6th Cir. 2011).